**STATE of Maine**

v.

**Carl A. NELSON.**

Supreme Judicial Court of Maine.

April 4, 1979.

David M. Cox, Dist. Atty., Margaret J. Kravchuk (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Albert C. Blanchard (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Defendant was convicted by a Piscataquis County jury of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1)(A)

(Supp. 1978).[1] We find it necessary to sustain his appeal because he was erroneously denied the opportunity of impeaching the prosecutrix with a prior inconsistent statement.

Defendant was the stepfather of the 15-year-old prosecutrix. On successive Saturdays, October 15 and October 22, 1977, defendant took the prosecutrix on bird hunting trips. The prosecutrix testified that on both occasions defendant held her back against the seat of his Scout with his left hand while he inserted a finger of his right hand in her vagina. The prosecutrix further testified that in each instance she resisted his advances by attempting to move away from defendant towards the door of the car. Defendant took the stand and denied all allegations of sexual contact.

 On both direct and redirect examination, the State inquired into the prosecutrix's past relationship with her stepfather. On direct she testified that her relationship with defendant prior to October 15, 1977, had been "[f]ine, normal" and on redirect that she had no reason to suspect that her stepfather would attempt sexual contact on the hunting trips. When defense counsel on recross attempted to introduce a prior statement by the prosecutrix that defendant had engaged in sexual intercourse with her within a year of the alleged incidents, the State objected and the presiding justice sustained the objection.[2]

1. The unlawful sexual contact provision, 17–A M.R.S.A. § 255(1)(A) (Supp. 1978), provides in pertinent part:
 "1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and
 "A. The other person has not expressly or impliedly acquiesced in such sexual contact;
 . . . ."
 The term "sexual contact" is defined by 17–A M.R.S.A. § 251(1)(D) as "any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire."

2. Previously on direct examination the State's attorney had asked the prosecutrix, ". . . in addition to these two incidents we have talked about today, has Mr. Nelson in the past every [sic] done anything similar to this to you?" The prosecutrix was prevented from answering by defendant's objection sustained by the presiding justice. Without commenting upon the correctness of that initial ruling excluding the proposed evidence when offered by the State, we note that the presiding justice, in also excluding evidence of similar import when sought to be introduced by defendant for impeachment purposes, was obviously trying evenhandedly to bar from the trial any evidence whose probative value was outweighed by its danger of unfair prejudice to defendant. See Rule 403, M.R.Evid. For the reasons stated in this opinion, however, the fact that defendant had earlier objected to similar evidence when offered by the State cannot be taken to prevent him from introducing evidence of inconsistent statements which in the unfolding of

■ After a careful consideration of the trial transcript, we conclude that the exclusion of evidence of the prior inconsistent statement constituted reversible error. The prosecutrix's testimony was the sole evidence presented by the State to prove the necessary elements of the section 255 crime with which .defendant was charged; namely, that he had performed the act of sexual contact and that the prosecutrix had not "expressly or impliedly acquiesced." Defendant's fate hung on the jury's assessment of her credibility. Her prior statement claiming that defendant had had sex with her within a year preceding the hunting trip incidents was facially inconsistent with her testimony in court that her relationship with defendant prior to October 15, 1977, had been fine and normal and that she had no reason to anticipate his sexual advances. The jurors should have been given the .chance to determine whether those inconsistencies should affect the credence they accorded the prosecutrix's testimony.[3]

If it had been admitted as requested by defendant, evidence of the prosecutrix's claim that he had previously committed another sex offense against her might have tended to confirm the jury's conclusion that he had indeed performed the act of sexual contact with her on October 15 and October 22, 1977. However, we cannot say beyond the reasonable doubt required to make the error harmless, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that the attempted impeachment of the prosecutrix's credibility would not have affected the jury in its other conclusion essential to his conviction; namely, that she had not acquiesced. Even though defendant ran the risk that introduction of the prior inconsistent statement might do him more harm than good,[4] his request that the jury be permitted to decide should have been respected. Defendant is entitled to a new trial.

Accordingly, the entry must be:

Appeal sustained.

Judgment of conviction set aside.

Remanded for further proceedings consistent with the opinion herein.

WERNICK, J., did not sit.

---

the testimony becomes important for impeaching the veracity of the only other witness to the alleged sexual contact.

3. "[A] primary interest" secured by the Sixth Amendment confrontation clause is "the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). As Chief Justice Burger has written for the United States Supreme Court in a burglary case:

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory but the cross-examiner has traditionally been allowed to impeach, i. e., discredit, the witness." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

Evidence of a prosecutrix's prior sexual relations with a defendant bears both on the prosecutrix's credibility and the issue of whether she acquiesced. *Bedgood v. State*, 115 Ind. 275, 279, 17 N.E. 621, 623 (1888). *Cf. State v. Elijah*, 206 Minn. 619, 289 N.W. 575 (1940). *See also* Amburg and Rechtin, "Rape Evidence Reform in Missouri: A Remedy for the Adverse Impact of Evidentiary Rules on Rape Victims," 22 *St. Louis Univ. L.J.* 367, 386 (1978).

4. The case at bar is not one where the evidence of alleged prior sexual activity was initially offered by defendant and objected to by the State for lack of probative value. Here, early in the State's direct case, the State itself had been barred from introducing similar evidence; and the State's objection to such evidence when offered by defense counsel during recross of the prosecutrix was apparently based on exclusively the inconsistency or the lateness of the defense's offer. We have thus no occasion to reach the problem which is addressed by Rule 412, recently added to the Federal Rules of Evidence, *see* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* 412–1 *et seq.* (1979), and by "rape shield laws," *see, e. g.*, Cal.Evid.Code § 782 (West's Cum.Supp.1976).