**STATE of Maine**

v.

**Frank GIGLIO.**

Supreme Judicial Court of Maine.

Argued Jan. 18, 1982.
Decided Feb. 17, 1982.

---

Charles K. Leadbetter, Anita St. Onge (orally), Fernand LaRochelle, Asst. Attys. Gen., Augusta, for plaintiff.

Nisbet, MacNichol & Ludwig, Francis M. Jackson (orally), Alexander MacNichol, South Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

After a three-day jury trial in Superior Court (Cumberland County), defendant Frank Giglio was convicted of Class B rape,[1] Class B gross sexual misconduct,[2] and the Class D crimes of simple assault[3] and criminal restraint.[4] Defendant had been charged with and tried for Class A rape,[5] Class A gross sexual misconduct,[6] aggravated assault (Class B),[7] and kidnapping (Class A).[8] We uphold all four convictions. However, since the concurrent sentences of one year for the two Class D crimes for which defendant was convicted exceed the legally

1. 17–A M.R.S.A. § 252(3) (Supp. 1980).

2. 17–A M.R.S.A. § 253(4) (Supp. 1980).

3. 17–A M.R.S.A. § 207 (Supp. 1980).

4. 17–A M.R.S.A. § 302 (Supp. 1980).

5. 17–A M.R.S.A. § 252(1)(B) (Supp. 1980).

6. 17–A M.R.S.A. § 253(1)(A) (Supp. 1980).

7. 17–A M.R.S.A. § 208 (Supp. 1980).

8. 17–A M.R.S.A. § 301 (Supp. 1980).

permissible sentences,[9] we must remand for resentencing on those convictions.

The testimony at trial showed that one Trynor arranged for the prosecutrix in this case to meet defendant Giglio one evening in mid-April 1980. The three of them went to Giglio's trailer, next to his body shop off Route 1 in Freeport. No crimes are alleged to have been committed at that time, but there is divergent testimony as to what happened. The prosecutrix testified that she had sexual intercourse with Trynor but not with Giglio. Trynor and Giglio testified that she had sex with Giglio as well. In the evening of May 6, 1980, the prosecutrix by prearrangement met Giglio and again went with him to his Freeport trailer. They expected Trynor to join them but he never came. They sat and chatted; Giglio drank.

The accounts given by the two participants of the later events at the trailer diverge significantly. According to the prosecutrix, Trynor called to say he could not come, whereupon she tried to leave. She could not open either of the doors to the trailer. Giglio erupted into bizarre and bloodthirsty threats, · seized her by the throat and hair, forced her to undress, thrust her onto the bed, and fondled her genitals. They moved erratically about the apartment, Giglio in an advanced state of intoxication. He variously beat and kicked her; and she brained him twice with a toilet tank cover, with no visible effect. She also attempted unsuccessfully to throw a television set through a window in order to escape. At length she ceased resistance and at Giglio's demand performed fellatio upon him. He achieved a momentary erection. They had intercourse "for maybe a few seconds and then he lost it." After Giglio fell asleep, the prosecutrix managed to open the back door of the trailer with a pair of pliers and made her escape.

Giglio's account is very different. After he and the prosecutrix had sat chatting for a while, one or the other suggested going to the bedroom. She asked if she could perform fellatio since she was in her period. Giglio was agreeable. They went to the bedroom. She undressed, but again with Giglio's acquiescence did not remove her panties. They commenced fellatio. *In medias res,* Trynor telephoned to say he would not be there. Both Giglio and the prosecutrix spoke with Trynor. After hanging up the telephone and making himself another drink, Giglio went toward the bedroom, whence the prosecutrix emerged, fully dressed and demanding to be taken home. She became hysterical, then subsided and went into the bathroom. Though nonplussed, Giglio began to get dressed to take her home. While dressing, he heard a noise in the bathroom. Upon his opening the bathroom door to investigate, the prosecutrix hit him twice over the head with the toilet tank lid. Still more nonplussed, Giglio crawled toward his bed and passed out. When he awoke later in the morning, he was in bed neatly covered up. He did not regain full memory of the night's activities for about a month.

At trial, testimony by various witnesses tended to corroborate the prosecutrix's account. Her injuries were consistent with having been beaten and seized by the throat. There was evidence that the doors of the trailer were secured in the way she had testified. Her statement that she had thrown the TV at the window and it had bounced off was corroborated by testimony that the next morning the TV was found lying on the floor and that the window appeared not to be made of glass. Although Giglio testified that the prosecutrix never took off her panties, they were found in his trailer by the police. Giglio's bedsheet was stained with blood, possibly the prosecutrix's menstrual blood. There was other confirmatory evidence as well.

Defendant offered in evidence the prosecutrix's psychiatric history in the form of extensive medical records, showing that she had been in and out of the Maine Medical Center psychiatric unit with a diagnosis of

9. The sentence of imprisonment for a Class D offense may be for "a definite period of less than one year," 17–A M.R.S.A. § 1252(2)(D) (Supp. 1981). We remand the case for revision of these sentences under M.R.Crim.P. 35.

latent schizophrenia. Defendant also offered the testimony of Dr. John S. Bishop, a clinical psychologist, that schizophrenia can distort the sufferer's perception of reality, giving rise to delusions and hallucinations. Dr. Bishop had not examined the prosecutrix, nor did he base his opinions on the events testified to at trial; his testimony would have been restricted to an explanation of latent schizophrenia as that diagnosis appeared in the prosecutrix's medical records. The court excluded all of this evidence.

Defendant's trial strategy was to present the jury with only two choices: convicting the defendant of the most serious offenses charged or setting him free. The defendant objected to the judge's instructing the jury on the lesser offenses of Class B rape, Class B gross sexual misconduct, and criminal restraint (Class D), on the ground that the evidence would not support convictions for the lesser crimes. Notwithstanding the defendant's objection, the judge instructed the jury on those offenses and also on simple assault, to which the defendant made no objection. The jury returned a verdict convicting defendant of all four lesser offenses.

1. The prosecutrix's psychiatric record

We reject defendant's argument that the trial justice erred by excluding from evidence the prosecutrix's psychiatric record and Dr. Bishop's explanation of the possible consequences of schizophrenia.

In general, evidence of mental disease is admissible for the purpose of impeaching the credibility of a witness, but admission is subject to the trial justice's discretion. *State v. Heald*, Me., 393 A.2d 537, 539–40 (1978). On this record, we cannot say that the justice abused the discretion vested in him. Nothing in the prosecutrix's voluminous medical dossier suggested that her mental problems had ever involved her in sexual fantasies or sexual adventures of the kind at issue in this trial. That fact alone distinguishes the case at bar from *State v. Davis*, Me., 406 A.2d 900 (1979), and *State v. Nelson*, Me., 399 A.2d 1327 (1979). Further, the diagnosis in the prosecutrix's medical records was of "latent" schizophre-

nia, which Dr. Bishop would have testified meant that, although she exhibited "clear symptoms of schizophrenia" (not specified in defendant's offer of proof), she had no history of a "psychotic schizophrenic episode"—apparently even of a nonsexual character. The probative value of the proposed evidence was therefore questionable. But, beyond this, it was represented to the court that Dr. Bishop, who had not examined the prosecutrix and would not have based his opinions on any testimony at trial, would not have been able to offer an opinion as to the extent to which the prosecutrix's perception of reality might have been distorted on the night of the crime. The jury would have had no rational basis from which to infer the extent to which the prosecutrix's medical problems affected her credibility. The trial justice could reasonably have feared that the medical evidence, if admitted, would insert a wild card into the jury's deliberations. Without a rational basis for evaluating the weight of this evidence, the jury could have been unduly influenced by residual popular prejudices against persons with psychiatric disorders or have been overawed by the appearance of scientific certitude in the psychologist's description of schizophrenia.

Defendant complains that the trial justice did not state for the record the basis for his ruling. In *State v. Poland*, Me., 426 A.2d 896, 900 (1981), we advised trial judges to explain on the record the basis for excluding relevant evidence under Rule 403. We continue to believe that our advice in *Poland* is sound, but it is admonitory only and cannot, in this case, be a ground for legal error. The attorneys had full opportunity to argue the point, and the judge had the relevant factors before him. There is no reason to assume that the judge did not exercise his discretion soundly. This case is not like *State v. Warren*, Me., 312 A.2d 535, 544–45 (1973), in which the trial judge stated an erroneous basis for his ruling.

2. Sufficiency of the evidence

Defendant protests that the jury could not rationally have found him guilty of

Class B rape and gross sexual misconduct and of Class D criminal restraint, but not guilty of Class A rape, Class A gross sexual misconduct, or Class A kidnapping.

The Class B sexual crimes are distinguished from the Class A crimes by the "voluntary social companion defense": it is a defense to prosecution for Class A rape and Class A gross sexual misconduct that at the time of the crime the victim was a voluntary social companion of the defendant and on that occasion permitted the defendant sexual contact. This "defense" has the effect of reducing the classification of the sexual crimes from Class A to Class B.[10] Giglio testified that all of his sexual activity with the prosecutrix was consensual, while she testified that it was all nonconsensual. Defendant argues that the jury had to accept the whole story of either Giglio or the prosecutrix and therefore could on this record choose only between verdicts at the two extremes: either conviction of the Class A rape and gross sexual misconduct or complete acquittal.

■■■ Defendant's argument does not withstand analysis. The jury is not required to believe the testimony of any witness *in toto*. The jury is entitled to give credence to portions of the witnesses' testimony selectively and to combine them in any rational way. *State v. Mahaney*, Me., 437 A.2d 613, 621 (1981). Here, it was not even necessary for the jury to believe affirmatively that the prosecutrix had permit-

ted Giglio sexual contact prior to his use of force and threats. Clearly, there was sufficient evidence of "partying" and "sexual contact" to put the "voluntary social companion" defense in issue; thereupon, the State had the burden of disproving beyond a reasonable doubt the existence of that classification-reducing circumstance. 17–A M.R.S.A. § 5(2) (Supp. 1980).[11] See our discussion in Part 4 of this opinion. The state of the evidence before the jury well justified their conclusion beyond a reasonable doubt that defendant had indeed compelled the prosecutrix to engage with him in sexual intercourse and fellatio, the necessary elements of Class A rape; and at the same time the evidence did not preclude the jury from entertaining a reasonable doubt that the prosecutrix had in the course of the evening at the Freeport trailer permitted defendant to have sexual contact as that term is defined in 17–A M.R.S.A. § 251(D) (Supp. 1981).[12] To reduce the sex offenses from Class A to Class B, it was enough that the jury could have entertained a *reasonable doubt* whether the State had succeeded in disproving the existence of the "voluntary social companion" defense. The jury could well doubt the prosecutrix's testimony that she permitted no sexual contact between herself and Giglio. Trynor testified that the prosecutrix had called him repeatedly asking him if he had any friends who wanted "a good time," and that this was why Trynor arranged for her to meet

---

10. 17–A M.R.S.A. § 252(3) (Supp. 1980) provides:

 3. Rape is a Class A crime. It is a defense to a prosecution [for nonstatutory rape] under subsection 1, paragraph B, which reduces the crime to a Class B crime that the victim was a voluntary social companion of the defendant at the time of the crime and had, on that occasion, permitted the defendant sexual contact.

17–A M.R.S.A. § 253(4) (Supp. 1980), relating to gross sexual misconduct, provides:

 4. Violation of subsection 1 is a Class A crime. It is, however, a defense to prosecution under subsection 1, paragraph A which reduces the crime to a Class B crime that the other person was a voluntary social companion of the defendant at the time of the offense and had, on that occasion, permitted him sexual contact.

11. In pertinent part, 17–A M.R.S.A. § 5(2) (Supp. 1980), now moved to be 17–A M.R.S.A. § 101(1) (Supp. 1981), provides:

 The State is not required to negate any facts expressly designated as a "defense" . . . in the statute defining the crime . . . [b]y proof at trial, unless the existence of the defense . . . is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt.

12. 17–A M.R.S.A. § 251(1)(D) (Supp. 1981) defines "sexual contact" as "any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire."

Giglio. Trynor and Giglio both testified that the prosecutrix had sex with both of them the first time she visited the trailer, though she denied having had sex with Giglio. Trynor and Giglio also testified that when Trynor called Giglio's trailer on the evening of the crime and talked to the prosecutrix, she told him that she was "partying"—a term from which in the context the jury could infer a degree of permissive sexual familiarity. Defense counsel on cross-examination raised the possibility that the prosecutrix removed her tampon early in the evening, not because it was uncomfortable as she said, but because she was preparing for consensual sex. On going to the hospital in Portland after escaping from Giglio's trailer, the prosecutrix initially did not tell the doctors that she had been beaten and raped, but rather that she had fallen downstairs. In light of the foregoing evidence, the jury could rationally have questioned whether the prosecutrix's relations with defendant prior to the commission of the crime were entirely decorous. Similarly, the jury had a rational basis for doubting that Giglio's story was entirely accurate in relating the sequence of the events at the trailer. Apart from Giglio's obvious motivation to shade the truth, there was evidence that Giglio was staggeringly drunk at the time of the crime and was hit over the head twice with a toilet tank cover and did not fully remember the events of the evening for a month.

On this record, the jury was by no means forced to choose between Class A convictions for rape and gross sexual misconduct and complete acquittal of those crimes.

■ We similarly reject defendant's argument that the jury on this record could only choose between Class A kidnapping and complete acquittal. To convict for kidnapping, the jury had to find beyond a reasonable doubt that Giglio knowingly confined the prosecutrix for a substantial period with the intention of committing a

crime. 17–A M.R.S.A. § 301(1)(A)(3) (Supp. 1981). Even though the evidence here might have supported such a finding, it would not have been irrational for the jury to question whether the State had proven beyond a reasonable doubt that Giglio had the necessary intent at the time that he restrained the prosecutrix. Again, the jury was not required to make a positive finding that the requirements of section 301 had not been met; it was enough that the jury could have entertained a reasonable doubt as to the intent element of the crime of kidnapping. Such a doubt was enough to warrant finding defendant guilty of the lesser included crime of criminal restraint, 17–A M.R.S.A. § 302(1)(B) (Supp. 1981), which does not require proof of an intent to commit a crime against the prosecutrix. All that was required for defendant's Class D conviction of criminal restraint was proof that he knowingly restrained the prosecutrix. There was abundant evidence to that effect.

■ Defendant makes a separate attack on the evidence supporting the rape conviction. Rape requires sexual intercourse,[13] while the requirements of the gross sexual misconduct statute are satisfied by a finding of any sexual act.[14] There was ample testimony by both Giglio and the prosecutrix as to fellatio, a sexual act sufficient to support the conviction for gross sexual misconduct. The only testimony as to sexual intercourse was the prosecutrix's statement that she had intercourse with Giglio "for maybe a few seconds and then he lost it." Defendant argues that the word "maybe" cannot support guilt beyond a reasonable doubt. It is obvious that the word "maybe" refers to the duration of the intercourse, not to the fact of penetration; certainly, the jury could have so found.

3. Reading back testimony to the jury

After deliberating for about two hours, the jury requested that the prosecutrix's

---

**13.** 17–A M.R.S.A. § 252(1); *see* 17–A M.R.S.A. § 251(1)(B) (Supp. 1980) (defining "sexual intercourse").

**14.** 17–A M.R.S.A. § 253; *see* 17–A M.R.S.A. § 251(1)(C) (Supp. 1980) (defining "sexual act").

testimony regarding the sequence of events be read back to them.[15] The presiding justice denied the jury's request on the ground that granting it would require rereading most of the prosecutrix's extensive testimony. The justice asked the jury to narrow its request. The jury retired for further deliberations and made no further request on this point.

Defendant claims that the jury misunderstood the issue of whether there had been consensual sexual contact *before* Giglio's use of force and threats of force. Thinking that there had been, the jury returned a verdict of Class B rape and gross sexual misconduct, rather than Class A. In fact, argues defendant, the testimony did not support any such finding, and the jurors were critically misled by the justice's refusal to let them listen to a reading of the prosecutrix's testimony.

 Whether testimony shall be read back to the jury is within the discretion of the trial justice. *State v. MacDonald*, Me., 382 A.2d 553, 554 (1978). In this instance the justice did not abuse his discretion. The jury's request was indeed extremely broad. The justice did not refuse to let any testimony at all be read back; rather, he asked the jury to narrow its request. If the jurors were indeed unsure on the point of whether the force and threats of force preceded or followed the first sexual contacts, they could have said so and the relevant portion of the testimony could have been searched for. Had the jury so narrowed its request, the issue on appeal would be different. As the case stands, the jury's original request encompassed virtually the entire testimony of the prosecutrix. The attendant circumstances did not manifest how this reading would materially assist the jury in its deliberations. The justice did not abuse his discretion in asking the jury

to narrow its request, nor in declining to grant it in its unnarrowed form.

### 4. Instructions on lesser offenses

Defendant objected to the trial justice's instructing the jury on the lesser offenses of Class B rape, Class B gross sexual misconduct, and criminal restraint. The sole basis of defendant's objection was that such instructions had no rational support in the evidence. As we have discussed, the evidence did support convictions of the lesser offenses; the trial justice properly instructed the jury to consider them.

 Counsel for both the State and defendant appear to be confused about the treatment of "lesser included offenses" and "alternatives" in 17–A M.R.S.A. § 13–A (Supp. 1981).[16] The trial court may instruct the jury on a lesser included offense if there is a rational basis in the evidence for finding the defendant guilty of that offense. An "alternative" can meet the definition of a lesser included offense set out in section 13–A(2). If it does not, section 13–A(3) provides that it may be sent to the jury only if several requirements are met, among them that the State and the defendant both agree to the instruction.

 Criminal restraint is clearly a lesser included offense of kidnapping. Because every element of criminal restraint is also an element of kidnapping, criminal restraint "must necessarily be committed" when kidnapping is committed, and criminal restraint thus meets the definition of a lesser included offense given in subsection 13–A(2)(A). Because a rational basis existed in the evidence for convicting defendant of criminal restraint, the judge acted within his discretion in instructing the jury on that crime.

15. As recited by the trial justice, the jurors' request was: "Could we hear [the prosecutrix's] statements relative to the sequence of the alleged assault."

16. A lesser included offense is one which, "[a]s legally defined, must necessarily be committed when the offense ... charged, as legally defined, is committed." 17–A M.R.S.A. § 13–

A(2)(A). Subsections 13–A(2)(B) and (C) give other definitions of a lesser included offense, not pertinent here. An "alternative" is defined as follows: "Facts which are a basis for sentencing classification of either the crime charged or the lesser crime shall be considered alternatives of those crimes." *Id.*

■ Class B rape and Class B gross sexual misconduct present a different problem. To convict defendant of those crimes, the jury was required first to find facts that would support convictions of Class A rape and Class A gross sexual misconduct. The jury had then to go further and to consider whether they entertained any reasonable doubt that the victim was not a voluntary social companion of defendant at the time of the offense and had not on that occasion permitted him sexual contact. It is therefore possible to commit Class A rape and Class A gross sexual misconduct without committing their Class B counterparts. The Class B crimes are therefore not lesser included offenses of the Class A crimes.

Nor do we think that the Class B crimes are "alternatives" of the Class A crimes for purposes of section 13–A. Class A rape and Class B rape are merely variants of the single, unitary crime of rape. One cannot commit Class B rape without committing acts which would support conviction for Class A rape were it not for the presence of mitigating circumstances. Class B rape is distinguished from Class A rape only by the added presence of the elements constituting the "voluntary social companion" defense, expressly designated as a "defense" by sections 252 and 253. The issue presented by defendant is governed not by section 13–A, which governs lesser included offenses and alternatives, but rather by section 5(2),[17] which governs defenses. Section 5(2) requires that when the existence of a "defense," as expressly so designated in the statute defining the crime, has been placed in issue by the admission of evidence sufficient to raise a reasonable doubt on the issue, then the State has the burden of disproving the existence of the defense beyond a reasonable doubt. Plainly, the "voluntary social companion" defense to the crimes of rape and gross sexual misconduct was put in issue by the evidence in this case; and it was not only proper, but necessary, for the trial justice to instruct the jury of its right to reduce the offense to a Class B rape or gross sexual misconduct.

17. *See* n. 11 above for the pertinent text of 17–A M.R.S.A. § 5(2) (Supp. 1980), now moved

5. Culpable state of mind

■ On appeal defendant argues for the first time that it was error for the trial justice to instruct the jury that the crimes of rape and gross sexual misconduct do not require proof of any culpable state of mind. The trial justice was applying the law as we stated it less than two years ago in *State v. Saucier*, Me., 421 A.2d 57 (1980). Defendant argues we should overrule *Saucier.* We decline to do so. In absence of any objection at trial, the charge may be reviewed only for manifest or "obvious error ... affecting substantial rights." M.R.Crim.P. 52(b). A charge that followed a current Law Court opinion can hardly be called manifest error, requiring our reexamination of the rule of law there declared. *See State v. Flick*, Me., 425 A.2d 167, 173 (1981). Defendant takes nothing by this belated claim.

The entry is:

Judgment affirmed as to Counts I and II of the indictment. Judgment vacated as to Counts III and IV of the indictment; case remanded for revision of the sentences imposed on the convictions for simple assault and criminal restraint.

All concurring.