**STATE of Maine**

v.

**Ronald ROWE and Mark Thurston.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1982.

Decided Dec. 6, 1982.

Henry N. Berry, III, Dist. Atty., Daniel W. Bates (orally), Asst. Dist. Atty., Andrew Siket, Law Student Intern, Portland, for plaintiff.

Kettle, Carter, Hannigan & Vickerson, William L. Vickerson (orally), Portland, for Ronald Rowe.

Charles J. Kahill (orally), South Portland, for Mark Thurston.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

CARTER, Justice.

After a trial in Superior Court (Cumberland County), a jury found the defendants guilty of Theft, Class C, 17–A M.R.S.A. §§ 353 & 362(3)(A) (1982). On appeal, the defendants raise as issues (1) the validity of a vehicular stop resulting in observation by a police officer of evidence in the defendants' vehicle and (2) the adequacy of the trial justice's instructions to the jury. Because we find that the presiding justice committed reversible error in refusing the defendants' request to instruct the jury regarding Class D and Class E Theft, which are lesser included offenses to Class C Theft, we sustain the appeal and vacate the judgments of conviction.

Based on the evidence at trial, the jury could have found that on July 25, 1981, Steve Carmichael and Scott Gentry drove to Gabriel Electronics in the Scarborough Industrial Park on Libby Road. The two cut a hole in the security fence surrounding the Gabriel yard and entered the yard. They took some lengths of copper tubing from wooden storage boxes and placed the tubing in the trunk and the back seat of their car.

After leaving Gabriel, Carmichael and Gentry were stopped on Route 1 by Scarborough Police Officer Babine for failing to dim the car's headlights. Babine observed the copper tubing in the back seat of the car. Finding no reports of theft of copper tubing, Babine took their identification and allowed Carmichael and Gentry to proceed.

On July 26, 1981, Carmichael told defendants Thurston and Rowe that Carmichael and Gentry had stashed some copper tubing in a field outside the Gabriel fence and that the defendants could pick up the tubing if they wanted it. That evening, the defendants and two others drove to Scarborough. The defendants dropped off the two passengers in a parking lot. The defendants drove to the Gabriel yard, found the copper tubing in a field near the plant, and put the tubing in their car. Defendant Rowe admitted that he stole the copper tubing but denied that he or defendant Thurston cut the fence or entered the fenced-in yard at Gabriel. The defendants picked up the two passengers and began the return trip to Portland.

Earlier on July 26th, Officer Babine had received an anonymous telephone call at the police station. The caller asked if Babine had stopped the previous evening a car containing copper tubing. Such information would have been known only by those affiliated with the police department. The caller then stated that the copper tubing had been stolen from Gabriel and that there would be a similar theft that evening, the 26th. As a result of this tip, Scarborough Police Officer Searcy checked the Gabriel yard that evening. He saw nothing unusual and observed no copper tubing outside and along the security fence. Searcy stationed himself near the road leading to the Industrial Park for observation.

When Searcy observed the defendants' car leaving the Industrial Park area, he followed the car and checked the registration. The car was registered to a person from Portland whom Searcy did not know. Searcy eventually stopped the defendants' car because of the information he had from the anonymous tipster and because it was unusual, based on his past experience, for four people to be in a car coming from the Industrial Park at approximately 9:30 p.m. As Searcy approached the defendants' car, he observed the copper tubing in the rear of the defendants' station wagon.

The copper tubing involved in the theft was circular wave guide used to transmit microwaves. The tubing is usable only when in very good condition; dents in the tubing cause problems in microwave transmissions. The value of the pipes depends greatly on their condition. When taken, new and unused, from the storage boxes in the Gabriel yard, the copper tubing found in the defendants' car had a value of $1,142.92. When taken, scratched and dented, from the defendants' car, the copper tubing was unusable and was scrapped by Gabriel for approximately $200.00.

On appeal, the defendants challenged the sufficiency of the evidence, the procedure during the voir dire of the jury, the denial of defendant Thurston's motion to suppress the officer's observations resulting from the vehicle stop, and the refusal to instruct on the lesser included offenses.

### Legality of the Stop

Because the suppression issue may affect subsequent proceedings on remand, we consider defendant Thurston's contention concerning denial of his motion. Our review of the suppression transcript reveals that the justice correctly denied defendant Thurston's motion to suppress the evidence obtained as a result of Officer Searcy's investigatory search.

■ An officer may stop a moving automobile if he has specific and articulable facts that, when combined with rational inferences from those facts, reasonably warrant suspicion of criminal conduct by the occupants. *State v. Rand,* 430 A.2d 808, 819 (Me.1981). A showing of probable cause is not necessary in order to stop and question the occupants. *State v. Chattley,* 390 A.2d 472, 475 (Me.1978). The United States Supreme Court has recently discussed the objective facts and circumstan-

tial evidence necessary to justify an investigatory stop:

> [t]he idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

*United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981).

■ Officer Searcy decided to stop the defendants' car based on the following: (1) the information from an anonymous tipster, who knew facts not known by those outside the police station, that the occupants of the car containing copper pipes, stopped by Officer Babine on the 25th, had burglarized Gabriel; (2) information from the same person that Gabriel would be burglarized again on the 26th; (3) the officer's past experience and observations that during evening hours, when all the Industrial Park businesses except one are closed, cars leave the area with, at most, two passengers.[1] Although perhaps none of these, alone, would have sufficed as a justification for the stop, the cumulative effect of the objective data, when combined with the reasonable inferences and deductions, which this officer could have made therefrom, yielded a "particularized suspicion" of criminal conduct that justified the stop of the defendants'

vehicle. Clearly, Searcy's facts were sufficiently specific and articulable to rise above the "inarticulate hunches" proscribed in *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).

After concluding that the vehicle stop was justified, the suppression justice correctly noted that Searcy's observations of the copper tubing were permissible. Evidence "in plain view," properly viewed by an officer who is legally justified to be where he is, is not the subject of a search and is properly admitted at trial. *State v. Thornton,* 453 A.2d 489 at 493 (Me.1982); *State v. Sapiel,* 432 A.2d 1262, 1266 (Me.1981).

### Jury Instructions

Both defendants were indicted for Class C Theft. The defendants requested a jury instruction on the lesser included offenses of Class D and Class E Theft.[2] Apparently confusing lesser included offenses and sentencing classifications, the trial justice refused the defendants' request. Instead, the justice noted that the indictment charged the defendants with theft of property in excess of $1,000.00 and that, if the jury was satisfied that a theft occurred, the jury must determine the value of property when stolen. The justice instructed:

> The allegations in this Complaint are that, as I pointed out, in respect to the theft charge, if you believe that a theft has occurred from the evidence and you're satisfied that a theft has occurred, you are—the Indictment charges that the value of that property was in excess of One Thousand Dollars. If you feel that there is, as I say, evidence to establish a theft by these Defendants, then you're

---

1. Only St. Johnsbury Trucking is open during the evening hours. Officer Searcy testified at the suppression hearing that based on his past experience, truck drivers travel to and from St. Johnsbury alone. Cars leaving the Industrial Park during the evening, therefore, generally have only one passenger. Occasionally, a car may have two truck drivers leaving St. Johnsbury together.

2. 17–A M.R.S.A. § 362 (1982) provides, in part:

3. Theft is a Class C crime if:
A. The value of the property or services is more than $1,000 but not more than $5,000;
\* \* \* \* \* \*
4. Theft is a Class D crime if:
\* \* \* \* \* \*
B. The value of the property or services exceeds $500 but does not exceed $1,000.
5. Theft is a Class E crime if the value of the property or services does not exceed $500.

going to have to concern yourself with what the value was of the property, the market value of the property as of the date of the theft; and it is going to be your function, should you find the Defendants guilty in respect to that Count, to merely indicate in dollars the amount that you feel that the value of the property was as of that particular time... It's going to be your function to determine what the proof is in respect to the value of the property.

■ Under 17–A M.R.S.A. § 13–A(2)(A),[3] a lesser included offense is an offense carrying a lesser penalty which must necessarily be committed when the offense actually charged is committed. The trial court must instruct the jury on a lesser included offense if there is a rational basis in the evidence for finding the defendant guilty of the lesser offense and if the instruction is requested by the State or the defendant. *State v. Giglio,* 441 A.2d 303, 310 (Me.1982); 17–A M.R.S.A. § 13–A(1). Otherwise, such an instruction is discretionary with the trial justice. 17–A M.R.S.A. § 13–A(1).

■ All of the elements of theft of property valued at less than $1,000.00 or at less than $500.00 are necessarily encompassed by conduct constituting a Class C theft of property valued in excess of $1,000.00, except, of course, for the value differential. Class D and Class E Theft, therefore, satisfy the definition of a lesser included offense of Class C Theft. The defendants properly requested an instruction on Class D and Class E Theft. Further, the sole defense theory, which had support in the evidence, was that the defendants did not burglarize Gabriel by entering the fenced-in yard; rather, the defendants stole the copper tubing stashed *outside* the security fence the previous evening by Carmichael and Gentry. At trial, defendant Rowe admitted taking the copper tubing with the intent to sell it.[4] Rowe denied cutting the fence or entering the yard.

The jury could have found, from the thrust of the defense theory, that at the time the defendants took possession of the pipe, it was lying outside the fence, undoubtedly scratched and dented and unusable for transmitting microwaves. The jury might have found that, at the time of the defendants' theft, the pipe did not have the value it had when taken by Carmichael and Gentry from the storage box. ($1,142.92). The evidence would support a conclusion that the pipe taken by the defendants was worth less than the market value of new, usable pipe; in fact, the jury could have found on all the evidence that when the defendants took the pipe, it was worth approximately $200.00, the scrap value.

Although the trial justice did inform the jury that it could determine any value for the pipe, that instruction was not, under these circumstances, the equivalent of an instruction on the lesser included theft offenses. The justice instructed the jury that if it was satisfied that a theft had occurred, it could determine the value of the pipe taken. But the justice stated twice that the defendants were charged with theft of property in excess of $1,000.00. Further, defendant Rowe *admitted* the theft of the pipe. The jury was never clearly instructed that it could find the defendants guilty, as it might do on the basis of the defendant's admission, *even if* it found the value

**3.** 17–A M.R.S.A. § 13–A (1982) provides, in part:

    1. The court shall not instruct the jury to consider, nor shall the court as factfinder consider, a lesser included offense, as defined in subsection 2, unless on the basis of the evidence there is a rational basis for finding the defendant guilty of that lesser included offense. If a rational basis exists, the lesser included offense shall be considered by the factfinder if requested by either the State or

defendant; otherwise, its consideration shall be a matter within the discretion of the court.

    2. For purposes of this section, a lesser included offense is an offense carrying a lesser penalty which:

    A. As legally defined, must necessarily be committed when the offense or alternative thereof *actually charged, as legally defined, is* committed.

**4.** Defendant Thurston did not testify at trial.

of the pipe to be less than $1,000.00.[5] To the contrary, on these instructions, the jury might well have found that a finding of value of less than $1,000.00 required a verdict of not guilty. In short, the jury was never instructed that it could believe the theory of the defense. When, as here, that theory is rationally supported in the evidence, the defense theory *must* be presented to the jury. Failure to do so constitutes reversible error. *Rand,* 430 A.2d at 815.

The entry is:

Appeal sustained.

Judgment of conviction vacated.

Remanded to the Superior Court for further proceedings consistent with this opinion.

All concurring.

5. This conclusion is supported by the jury verdict:

> THE CLERK: On Count II [Theft], is the Defendant [Thurston] guilty thereof or not guilty?
> MR. FOREMAN: Guilty.
> THE CLERK: What is the monetary amount, sir?
> MR. FOREMAN: *Over $1,000.00.*

\* \* \* \* \* \*

> THE CLERK: On Count II [Theft], is he [Rowe] guilty thereof or not guilty?
> MR. FOREMAN: Guilty.
> THE CLERK: What is the monetary value of the—
> MR. FOREMAN: *Over $1,000.00.*
> (Emphasis added.)