**STATE of Maine**

v.

**Glenn REED.**

Supreme Judicial Court of Maine.

Argued March 16, 1983.

Decided April 26, 1983.

John R. Atwood, Dist. Atty. (orally), Belfast, for plaintiff.

Silsby & Silsby, Sandra Hylander Collier (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

After a trial in Superior Court (Waldo County), a jury found the defendant guilty of Rape, in violation of 17-A M.R.S.A. § 252(1)(B), Class A (1980). Because we find reversible error in the trial justice's refusal to instruct concerning the defense that the victim had been a voluntary social companion of the defendant at the time of the incident, 17-A M.R.S.A. § 252(3) (1983), we vacate the judgment and remand for a new trial.

The prosecutrix, who was sixteen at the time of the alleged incident, gave two statements to the police, which were consistent with her testimony. She stated that she was on vacation at the Crooker residence in Lincolnville on the date of the incident. She decided to walk to the Center Store in Lincolnville to buy cigarettes. Although she was not hitchhiking, she accepted three rides on her trip to and from the store. The defendant offered the third ride, as the prosecutrix was returning from the store. When the defendant's truck approached the turn for the Crookers' house, she opened the door to get out but the defendant grabbed her, pulled her back in the truck, and took her to his house.

The prosecutrix testified concerning her unsuccessful attempts to leave the defendant's house and the defendant's chasing, grabbing, and touching her. The defendant eventually pulled her into the bedroom and raped her. The defendant then drove the prosecutrix back to the Crookers' driveway.

Mr. Crooker called the police and they took the prosecutrix to the hospital. The examining physician and emergency room nurse testified that the prosecutrix was very upset during her examination. The physician stated that her condition, including an abrasion at the vaginal opening, was consistent with forcible intercourse.

The defendant's account of the events contrasted greatly with the prosecutrix's testimony. He testified that he had been en route toward his house when he picked up the prosecutrix, who was hitchhiking. He invited her to accompany him because she told him that she was bored; he pulled his truck over to the side of the road and gave her the option of getting out and walking but she declined that opportunity. When they arrived at his house, they looked at the view and conversed.

He testified that eventually, after some small talk in the defendant's living room, the defendant kissed the prosecutrix, who seemed responsive. He picked her up, took her to his bedroom, and removed their clothes. The two eventually engaged in sexual intercourse. The defendant's general testimony was that she had been a very willing sex partner.

On appeal, the defendant challenges six rulings by the trial justice. Our determination that a new trial is necessary obviates the need to discuss evidentiary rulings at the prior trial. We consider only the defendant's challenge to the trial justice's instructions.

Both before and after the judge instructed the jury, the defendant requested an instruction concerning the section 252(3) defense. The section provides:

Rape is a Class A crime. It is a defense to a prosecution under subsection 1, paragraph B, which reduces the crime to a Class B crime that the victim was a voluntary social companion of the defendant at the time of the crime and had, on that occasion, permitted the defendant sexual contact.

The trial justice refused the instruction, stating that "[i]t's not in this case."

If the jurors believed the defendant's testimony, they could have found that the prosecutrix had been a voluntary social companion of the defendant. The gist of the defendant's testimony was that the prosecutrix had voluntarily accepted the defendant's offer of a ride and had accompanied him to his house because she was "bored"; that once at his house, the defendant and the prosecutrix climbed onto the defendant's roof to admire the scenery and then went inside his house and talked; and that she allowed the defendant to put his arms around her, to kiss her, and to take her into his bedroom. If believed, the defendant's testimony established that the prosecutrix was with the defendant at his house because she wanted to be there.

■ If the jurors believed the defendant's testimony concerning the events in the bedroom, they could have found that the prosecutrix had permitted the defendant sexual contact. Title 17-A M.R.S.A. § 251(1)(D) (1983) defines sexual contact as "any touching of the genitals directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire." Both the prosecutrix and the defendant testified that she manipulated his penis. She testified that the defendant made her stimulate him in order to make him reach orgasm. The defendant testified that she voluntarily stimulated his penis in an effort to help him achieve an erection. Consequently, if the jury believed the defendant's account, the jury could have found that the prosecutrix willingly and directly touched the defendant's genitals in order to arouse his sexual desire; such action constitutes the sexual contact required by the section 252(3) defense.[1]

1. We do not read the § 252(3) language, "permitted the defendant sexual contact," as requiring that the defendant touch the prosecutrix. The definition of sexual contact is *"any* touching of *the* genitals . . . for the purpose of arousing or gratifying sexual desire." § 251(1)(D) (emphasis added). Neither this definition nor the § 252(3) defense suggests any limitation on who may be the actor. Nor does the purpose of arousing or gratifying sexual desire require a construction that only the defendant may perform the act constituting sexual contact. In terms of legislative intent and common sense, if this § 252(3) defense is available when the prosecutrix voluntarily allows the defendant to touch her genitals, the defense most certainly is available when she voluntarily touches the defendant's genitals.

The essence of the voluntary social companion defense is that the victim voluntarily induced the performance of the ultimate sexual act by (1) being voluntarily present as a social companion, and (2) permitting sexual contact, short of the sexual act, itself, to occur. The theory of the defense is that by permitting any sexual contact to occur in the context of a present voluntary social relationship, the victim has led the defendant to believe there is

willing consent to the performance of the ultimate sexual act or has so aroused the defendant that the performance of the sexual act is a reasonably expectable consequence of *the victim's* conduct.

It is the indication of willingness to submit to, or the arousal of need for, sexual gratification by the conduct of the victim that is prescribed by the Legislature to be of sufficient mitigating significance to justify a jury's reduction of the seriousness of the offense. *State v. Giglio,* 441 A.2d 303, 308 (Me.1982). The specific mechanics of the sexual contact by which that belief or arousal is achieved are irrelevant to the purposes of the statutory defense.

In *Giglio,* the victim testified that the defendant "erupted into bizarre and bloodthirsty threats, *seized* her by the throat and hair, *forced* her to undress, *thrust* her onto the bed, and fondled her genitals." 441 A.2d at 306 (emphasis added). One could hardly find from those facts that the victim had "permitted" sexual contact and, in fact, the victim's entire testimony in that case nowhere indicates any consent by her to any sexual contact. The defendant's testimony, on the other hand, was that the victim "asked if she could perform

As in *State v. Giglio,* 441 A.2d 303, 308 (Me.1982), "there was sufficient evidence of 'partying' and 'sexual contact' to put the voluntary social companion defense in issue ..."; it was for the jury to determine whether the sexual contact, as distinguished from the intercourse itself, at the time of the crime, had been consensual. Once the defense is in issue, the State has the burden of disproving beyond a reasonable doubt the existence of that defense. 17-A M.R.S.A. § 5(2) (1980).[2] We have stated: "[t]o reduce the sex offenses from Class A to Class B, it was enough that the jury could have entertained a *reasonable doubt* whether the State had succeeded in disproving the existence of the 'voluntary social companion' defense." *Giglio,* 441 A.2d at 308.

■ The theory of the defense must be presented to the jury if that theory is rationally supported in the evidence. *State v. Rowe and Thurston,* 453 A.2d 134, 138–39 (Me.1982). In this case, the voluntary social companion defense constituted the entire defense case. The defendant was, therefore, entitled to have an instruction concerning the classification-reducing defense. *Giglio,* 441 A.2d at 308–09. Failure to give that instruction was reversible error. *State v. Rand,* 430 A.2d 808, 815–16 (Me.1981).

The entry is

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

GODFREY, ROBERTS and VIOLETTE, JJ., concurring.

WATHEN, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I respectfully dissent. I strongly disagree with the conclusion that the presiding justice erred in refusing to instruct the jury with regard to section 252(3). Contrary to the position stated in footnote 1 of the Court's opinion, I believe that the language of section 252(3) can only be read as requiring that the defendant touch the genitals of the prosecutrix rather than the order of the relation being reversed. The statutory language is clear and unambiguous:

It is a defense to a prosecution [for forcible rape] ... which reduces the crime to a Class B crime that the victim was a voluntary social companion of the defendant at the time of the crime and had, on that occasion, *permitted the defendant* sexual contact. (emphasis added)

The Court's opinion states that logical symmetry and common sense suggest that the same reduction in the class of the offense should apply in those instances where the victim *commits* rather than *permits* a sexual contact. It is sufficient to note that the language of the statute provides no support for this view.

In enacting section 252(3), the Maine legislature addressed a factual circumstance which is frequently present, or at least claimed to be present, in prosecutions for rape. The circumstance involves the claim that the victim and the perpetrator were voluntary companions rather than strangers and that the victim willingly engaged in acts of sexual intimacy at some point prior to the act of forcible rape. It is certainly

---

fellatio since she was in her period ... they went to the bedroom. She undressed ... they commenced fellatio...." 441 A.2d at 306.

Thus, the only evidence in *Giglio* of consensual sexual contact as a basis for the defense was of contact *by the victim with the genitals of the defendant.* We concluded in *Giglio* that "[p]lainly, the 'voluntary social companion' defense to the crimes of rape and gross sexual misconduct was put in issue by the evidence in this case; and *it was not only proper, but necessary,* for the trial justice to instruct the jury of its right to reduce the offense to a Class

B rape or gross sexual misconduct." 441 A.2d at 311 (emphasis added). Hence, it is implicit in *Giglio* that consensual sexual contact by the victim with the genitals of the defendant constitutes the permitted sexual contact within the language of the statute. We remain convinced that such holding comports with principled canons of statutory construction, and represents the informed intent of the Legislature in its use of the statutory language.

2. 17-A M.R.S.A. § 5(2) (1980) is now 17-A M.R.S.A. § 101(1) (1983).

permissible for the legislature to have concluded that the seriousness of such an offense is consistent with Class B rather than Class A. This type of rape begins in voluntary companionship and is preceded by a consensual act which could serve as a warning to one of the participants, while serving as a sign of encouragement to the other. Clearly, the legislature could have selected, for that purpose, *any* act of either participant anywhere along a continuum starting with the holding of hands. The wisdom of the legislative selection is not before us; our task is to carry out the limitations expressed in the language of the statute. It was the intent of the legislature to diminish the seriousness of the offense only in those cases where the trier-of-fact concludes that the victim permitted the defendant to touch her genitals.[1]

In the case now before us there is no evidence to suggest, even if believed, that the forcible rape was preceded by the victim permitting the defendant to touch her genitals. The presiding justice correctly ruled that the section 252(3) "defense" had not been generated factually. I would affirm the conviction.

1. In *State v. Giglio,* 441 A.2d 303 (Me.1982) we did not hold, nor did we suggest, a contrary construction of the statute. In *Giglio,* a section 252(3) instruction was given over defendant's objection and this Court held that no error was committed by the presiding justice in giving the instruction. Because of the manner in which the issue was posed, this Court, quite properly, did not focus upon an affirmative statement or delineation of the conduct which would result in mitigation under the statute. Furthermore, when one considers the freedom of the fact-finder to selectively adopt or reject evidence, it is clear that the evidence in *Giglio* generated the issue whether the victim had "permitted the defendant" to touch her genitals.