ROBERT A. WILES, AN INFANT, BY ARTHUR D. WILES
*vs.*
CONNOR COAL AND WOOD CO.
ARTHUR D. WILES *vs.* CONNOR COAL AND WOOD CO.

Penobscot.   Opinion, July 24, 1948.

*Eaton and Peabody,* for plaintiff.

*James E. Mitchell,*
*Michael Pilot,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

MURCHIE, J. In these two cases, tried together and brought forward by the defendant on identical exceptions, a minor, by his next friend, and his father, recovered verdicts in the Trial Court which represent jury findings on liability and jury estimates of the damage suffered by the minor, run over while attempting to cross a public highway by defendant's truck driven by its agent, and by both the minor and his father in the past and future expense of his medical treatment.

The exceptions are to the admission over objection of the opinion evidence of two witnesses as to the speed of defendant's motor vehicle at or immediately prior to the event, and the refusal of the Trial Court to direct verdicts for the defendant. One of the witnesses whose testimony is in question was just under ten years of age at the time of the accident, the other just over that age. Both were companions of the minor plaintiff and were crossing the road with him when he was injured, as was another boy who did not see the truck at all prior to the accident. Neither of the two who testified on the question of speed saw the truck until it was within a few feet of the point where the accident occurred.

The damage awards are not claimed to be excessive. The issue is liability. It must be resolved with full recognition of the principle that the facts must be viewed in the light most favorable to the plaintiffs, giving them the benefit of every justifiable inference. This principle controlled *Ross v. Russell*, 142 Me. 101; 48 A. (2nd) 403; and cases cited therein. Additional principles therein set forth, and supported, are that a pedestrian is not required as a matter of law to look and listen before starting to cross a road, and that the degree of care required of a minor is not that applicable to an adult but must be measured with due regard to age and capacity.

The exact location of the point where the accident occurred is not established more definitely than that it was within two or three feet of the southerly limit of the northerly of three traffic lanes on Washington Street in Bangor, just easterly of Exchange Street, and between seventy-five and a hundred feet easterly of the median line of the latter. The over-all width of Exchange Street, according to a plan in defendant's brief reproducing one in evidence with scaled measurements and a location of the truck added (see *infra*), is slightly in excess of sixty-five feet, approximately twenty feet of which is devoted to sidewalks of substantially the same width on the sides thereof. The distance between the sidewalk curbs approximates forty-eight feet. On Washington Street the curb to curb measurement is thirty-five and four-tenths feet, but the sidewalk on the southerly side stops more than a hundred and ten feet east of the median line of Exchange Street. The northerly traffic lane according to the only estimate in the record was about ten feet wide. The median line of Washington Street east and west of the intersection would jog something like twenty-five feet at Exchange Street, as is shown by the plan.

Some of the evidence referred to hereafter can be considered to best advantage by reference to the plan, and particularly to the location of the westerly end of the sidewalk on the southerly side of Washington Street and the identified business establishments on the northerly side.

The accident occurred at about half past three in the afternoon of a January day in broad daylight. The highway was dry and level but had a small accumulation of ice and dirt along the curb on the northerly side of it, extending into the highway about one foot. It had neither crossing lines nor traffic lines painted on its surface, but traffic at the intersection traveled in three lanes and was controlled by lights which at the pertinent time were holding all eastbound Washington Street traffic west of the intersection and all westbound traffic on that street east of it except that headed to make the turn north into Exchange Street. The northerly lane accommodated that traffic. Defendant's truck, so far as the record shows, was the only vehicle moving in it at the time of the collision, immediately prior thereto or thereafter for some minutes. In the interval the first officer to arrive on the scene made two chalk marks on the highway to identify the locations of a cap of the minor plaintiff found lying in the road and the left rear wheel of the truck where it stood at rest.

On the record the basis for liability must have been a finding that the speed at which the defendant's truck was being driven constituted negligence and was the proximate cause of the accident. This is alleged in the first count in each declaration. Another count in each alleges that it was in an unsatisfactory state of repair, but there is no basis for an affirmative finding thereon. The evidence directly contravenes that allegation. Speed is the issue. The controlling statute, R. S. 1944, Chap. 19, Sec. 102, provides in Sub-paragraph I that motor vehicles shall be driven:

> "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the

traffic, surface, and width of the highway, and of any other conditions then existing * * *."

Sub-paragraph II specifies limits of fifteen miles per hour in approaching and traversing intersections and twenty-five miles per hour in business districts. The lesser speed is applicable within fifty feet of an intersection where the view is obstructed, and express provision is that it shall be deemed obstructed if there is not a clear and uninterrupted view of the intersection, and the traffic upon all ways entering it, for a distance of two hundred feet therefrom, during the last fifty feet of approach. Express statutory declarations are that speeds within the stated limits are *prima facie* lawful and that operation in excess thereof is *prima facie* not reasonable and proper.

The evidence would require factual decision that the minor plaintiff and his companions were crossing the highway diagonally northwesterly, faster than at a normal walking rate; that none of them looked to see if any westbound traffic was moving in the northerly lane, and none, except possibly the boy who brought up the rear, looked for any after leaving the southerly sidewalk; that neither the minor plaintiff nor the companion who was third in line saw the defendant's truck before the accident; that the minor plaintiff was in the lead and entered the northerly lane, from between two stationary motor vehicles in the middle lane, when the defendant's truck was moving westerly in it within a few feet of the place of entry; that he was struck by it when not more than two or three feet into the northerly lane; that he was thrown to the ground by the impact; that his injuries resulted from being run over by the left rear (dual) wheels; and that the truck came to a stop without leaving scuff marks on the highway and before its front wheels reached the traveled way in Exchange Street. A measurement taken by the police gives the distance from the place where the cap was picked up to the left rear wheels of the truck where it came to rest as thirty-eight feet.

The approximate location of the truck at that place is indicated on the plan, although the testimony does not place it definitely except that the front end was "not quite" into Exchange Street. The truck was of a ton and a half capacity, about sixteen feet long, with a body six and a half feet wide on the outside. Its location with reference to the business establishments at the time of impact is not shown but may be inferred with reasonable accuracy from the facts (a) that the boys were crossing the road from the westerly end of the sidewalk and fence on the southerly side of Washington Street to the Adams House, and (b) that there was a blood-spot on the highway only a few inches from the place where the cap was found, approximately in line with the most easterly manhole shown on the plan. The spot and manhole are a few feet easterly of the property line between Richardson's and the Adams House projected southerly, but the point of impact must have been easterly thereof, since both the impact and the passage of the truck over the minor plaintiff's body would tend to move him westerly. That projected line would be fifty feet from the easterly limit of Exchange Street, roughly sixty feet from the easterly side line of the traveled portion thereof, and upwards of eighty feet from its median line.

That it is the particular and peculiar province of a jury to resolve such issues of fact as are involved in the instant cases is so clearly established as to require no citation of authority. Those factual issues are (a) the rate of speed at which the truck was being operated, (b) the part of it which knocked the minor plaintiff to the ground, and (c) where he entered the northerly traffic lane. On all of them there is a conflict of testimony, as there is on the question whether the boy picked himself up and moved northerly or was picked up by a bystander, but the factual decision on that is not material to the controlling issues. As to those the record carries opinion evidence as to speed from five witnesses, including the two whose competency to testify on the point is challenged by the exceptions, which must be

considered in the light of the incontrovertible fact that the truck was brought to a stop within sixty feet without dragging its wheels; and the statements of four witnesses on each of the other questions, to be considered in the light of equally incontrovertible facts (a) that the injuries were caused by the rear wheels of the truck and not by the front; (b) that the boys were crossing the road diagonally from a place approximately eighty feet easterly of the limit of Exchange Street to a business place the entrance to which was slightly more than fifty feet easterly thereof; and (c) that the cap and blood-spot were more than forty feet east of that street limit.

Factual declarations as to the part of the truck which struck the minor plaintiff and where he entered the northerly traffic lane do not involve the evidence rulings which are challenged. Decision on the latter of these points must precede consideration of speed because of the conflicting *prima facie* speed rules established by the statute. The question whether the statutory last fifty feet of approach to an intersection is to be measured from a street limit or its median line has never been decided and need not be in the present cases. The examination by counsel for the plaintiffs of the draughtsman who prepared the plan indicates that he construes the statute as applicable to the limit rather than the median line, but unless the uniform testimony of the minor plaintiff and his companions is disregarded, the decision must be that he entered the northerly traffic lane and was struck by defendant's truck more than fifty feet from the easterly limit of Exchange Street. The only justifiable inference which will reconcile the testimony of the boys as to where they were crossing the highway with the location of the cap and blood-spot is that the boy was thrown, carried or moved more than ten feet westerly by the impact and passage of the truck. The "Approximate path of plaintiff," shown on the plan by a broken line, indicates that the boys were headed for Richardson's when they crossed the road. This is contrary to all the testimony which identifies the Adams House as their objective.

The verdicts do not disclose whether the factual decision of the jury on liability was based on finding that the accident occurred within fifty feet of the intersection, on the basis of a speed that was *prima facie* not reasonable and proper, or that despite a *prima facie* lawful speed there was negligence because it was in excess of what would have been "reasonable and proper, having due regard to the traffic" and other controls. If the former, it is obvious that the decision is not justified by the evidence, viewing it most favorably to the plaintiffs. To apply the same test to the alternative theory involves the speed evidence.

Disregarding, for the moment, the question of the competency of the opinion evidence challenged by the exceptions, the record contains speed estimates varying from a maximum of twenty-five miles per hour to a minimum of less than ten. The only flat twenty-five mile estimate was that of the boy who was just under ten years of age and was crossing the road with the minor plaintiff, next in line to him, and did not see the truck until it was within three or four feet of him and two or three feet of his leader who was hurt. That this estimate is high is shown by that of the only bystander who saw the truck prior to the accident— around fifteen or twenty—as well as by the boy's admission on cross-examination that as a matter of truth he did not know whether it was going "twenty-five, or ten, fifteen, or thirteen." The evidence of another bystander who gave a flexible estimate "Maybe twenty—twenty-five" must be disregarded. His own story indicates that he did not see either the truck or any of the boys before the accident, yet he averred and reiterated that the truck was traveling too fast, the last reiteration being when he was confronted in cross-examination with a statement to the police shortly after the accident, that it was proceeding at a moderate rate of speed. His reply was "It was going too fast. It might have been moderate."

The jury must have disregarded, as was its right, the opinion evidence of the three occupants of the truck and the

companion of the minor plaintiff who estimated the speed as "faster than seven or eight miles an hour. I know that," or reached its decision on the ground that even the speed indicated by that testimony was too fast in view of the traffic and other conditions. It may have considered the twenty-five mile speed estimate credible, or that of the bystander who estimated "around fifteen or twenty" and quoted the exclamation of some unidentified person "Look at those kids. That kid is going to get hit." That bystander saw the collision but did not specify, and was not asked, how far the truck was from the child when he saw it first. Assuming either view, it is apparent that the jury disregarded the only justifiable inference to be drawn from the stopping of the truck, and the undoubted fact that the injured boy stepped into the path of the truck within three feet of it. It is with reference to that undoubted stopping and stepping that the principle of law which controlled *Ross* v. *Russell, supra*, has its bearing. That case was decided, within the controlling principle, on the ground that a jury would have been justified in finding on the evidence that although the minor did not look and listen before entering a traffic lane between two motor vehicles stopped by a traffic light, she was not chargeable with contributory negligence. The controlling issue here is not contributory negligence but the negligence of the defendant. The only justifiable inferences to be drawn from the stopping of the truck and the stepping of the minor are that the truck was not travelling at more than moderate speed and that the stepping was at a point which gave the driver no opportunity to avoid an accident.

The present facts are not comparable with those presented in *Ross* v. *Russell, supra*, but rather with those in *Levesque* v. *Dumont et al.*, 116 Me. 25; 99 A. 719; and, in lesser degree, those in *Milligan* v. *Weare*, 139 Me. 199; 28 A. (2nd) 463. In both of those cases, as the writer of the opinion in the *Ross* case notes, the real basis for decision was that the act of the pedestrian was the sole proximate cause of the accident. So it was here. Without reference

to the age and capacity of the minor plaintiff or the question of his contributory negligence, the facts, viewed most favorably to the plaintiffs, do not justify a factual finding that the defendant's truck was being negligently driven. Due care in the operation of a motor vehicle under such circumstances as this case discloses does not require that an operator. proceed so slowly that he can stop within a distance of three feet if a pedestrian hurries suddenly into the path of his vehicle. Verdicts for the defendant should have been directed.

An additional point on which there is a conflict of testimony, i.e. whether the minor plaintiff was struck by the front bumper of the truck, its fender or its body, may be said to support decision that the defendant herein was not chargeable with negligence, although there is no necessity for resolving the conflict. One of the companions of the minor plaintiff said it was the bumper, another that he thinks it was, and still another that it looked as if it was, or as if it was the fender, yet the second of these said that he did not see the truck at all. The bystander who saw the accident testified that it looked as if the body of the truck hit the boy. It would be hard to reconcile a finding that the boy was hit by the bumper with the undoubted fact that the front wheels did not run over him and the rear wheels did, as would be the natural result if he was knocked down by either the fender or the body. In either such case, and particularly if the impact was with the body of the truck, the inference would be that the minor plaintiff was never in a place where the truck driver had even a chance to see him and stop the truck.

While verdicts should have been directed for the defendant without reference to the question of the competency of the opinion evidence of the two boys about speed, the exceptions challenging the admission of that evidence merit consideration. If it was not competent it is even more apparent that the verdicts should have been directed. A considerable latitude on the issue of the competency of such

evidence is vested in the Trial Court, but relief is available in appellate proceedings if discretion is abused. *Masse* v. *Wing et al.,* 129 Me. 33; 149 A. 385. The Massachusetts Court, in *Koch* v. *Lynch,* 247 Mass. 459; 141 N. E. 677, declared the applicable rule although the exception which raised the issue was overruled on the ground that substantial rights were not injuriously affected by the admission of the incompetent testimony. Chief Justice Rugg declared in the *Koch* case that a witness ought not to be permitted to give opinion evidence on the speed of a motor vehicle when he did not see it "until just as it struck" a plaintiff, saying:

> "He could have had no intelligent thought about
> the speed, even though fifty-seven years of age."

The simplest mathematical calculation will show that a vehicle traveling at a rate of fifteen miles per hour traverses twenty-two feet in a single second. If we accept the testimony of the boy who saw it for the first time when it was three feet (taking the larger estimate) from the lad who was run over and assume a speed only three-fifths as great as his estimate, it would have reached that lad in less than a seventh of a second. The corresponding distances for speeds of twenty and ten miles per hour are a little more than thirty-two and fourteen and a half, respectively. The corresponding time calculations are a little less than a tenth and a fifth of a second. According to the testimony of the boy the speed would represent travel at more than thirty-six feet per second and the three feet would have been covered in less than a twelfth of a second. The corresponding figures for the other boy are not so extreme because his speed estimate was less than a third but neither time interval would permit intelligent thought. The opinion evidence challenged by the exceptions should have been excluded.

The case presents errors in the admission of evidence and in the refusal to direct verdicts.

*Exceptions sustained.*