**STATE of Maine**

v.

**Reginald G. GROVER, Jr.**

Supreme Judicial Court of Maine.

Argued May 6, 1983.

Decided May 23, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Hall, DeSanctis & Schultz by Julio De-Sanctis (orally), Bangor, for defendant.

McKUSICK, C.J., GODFREY, NICHOLS, CARTER and WATHEN, JJ., and DU-FRESNE, A.R.J.

CARTER, Justice.

On January 4, 1982, defendant was indicted for violation of 17–A M.R.S.A. § 252, Rape, Class A (1983), or 17–A M.R.S.A. § 253, Gross Sexual Misconduct with a Dangerous Weapon, Class B (1981). After a trial in Superior Court (Penobscot County), a jury found the defendant guilty of Rape, Class B.[1] The defendant was sentenced to two years, with all but 120 days suspended.

After the defendant's motion to sever was denied, the trial commenced on July 28, 1982. The State's and the defendant's version of events were quite similar, with a few notable differences.

The victim, Alice, and the defendant had known each other for several years. They had lived next door to one another at one time. On the evening of the rape, the defendant had been drinking in several bars in Bangor. By chance, he met Alice at Pat's Cafe and sat and drank with her, her husband, and two others at her table for a while. According to Alice, the defendant

---

1. Title 17–A M.R.S.A. § 252(3) provides:

Rape is a Class A crime. It is a defense to a prosecution under subsection 1, paragraph B, which reduces the crime to a Class B crime

that the victim was a voluntary social companion of the defendant at the time of the crime and had, on that occasion, permitted the defendant sexual contact.

sat beside her and began rubbing her leg and telling her he wanted to take her to bed. Alice testified that she tried to discourage the defendant's actions.

The defendant admitted touching Alice's "privates" and making remarks to her but stated that Alice did not discourage him. One person seated at the table with Alice and the defendant told the police that he did not get the impression that Alice did not want to talk to the defendant; a second person at the table testified that he did get such an impression.

After one of Alice's friends left, her husband decided to leave the bar and asked Alice to accompany him. Alice refused and her husband left without her, after arranging to have the second friend at the table, Jim, take Alice home. The defendant, however, told Jim that he (the defendant) wanted to be alone with Alice. Jim told the defendant to take Alice home and left the bar. Alice testified that she tried to leave with Jim but he told her that the defendant was going to walk her home. Alice left the bar with the defendant because she did not want to walk home alone.

Alice testified that after she and the defendant left the bar, they walked for a few minutes and the defendant again began his aggressive behavior and his, as she stated, "dirty accusations." The defendant hugged her and asked her to go over to some parked cars in a driveway. Alice tried to refuse but the defendant dragged her toward the cars. Alice began screaming and the defendant covered her mouth with his hand. When Alice screamed a second time, the defendant put a knife to her throat and told her he would use the knife if she was not quiet. According to Alice, the defendant eventually found an unlocked car, forced her inside the car, ordered her to disrobe and to lie down, and raped her for approximately one and one-half hours.

The defendant testified that Alice declined to leave the bar with her husband because she wanted to stay to visit with Jim and the defendant. After Alice's husband left, the defendant bought Alice a few beers. The defendant stated that when Jim left the bar, Alice wanted to go with him but did not attempt to catch him. Jim testified that when he announced his departure, Alice remained seated at the table talking to the defendant.

According to the defendant, when he and Alice left the bar, he offered to call a cab but Alice preferred to walk. He stated that they were hugging each other as they walked down the street. Eventually, the defendant stated, "[w]e just more or less walked over towards the car." The defendant denied using force, denied putting his hand over Alice's mouth, and denied putting a knife to her throat. He testified that Alice entered the unlocked car voluntarily and that they engaged in consensual sexual intercourse.

At the close of the evidence, the defendant's motion for acquittal and to compel an election between charges was denied. During the discussion concerning instructions, defense counsel inquired concerning whether the justice intended to instruct with regard to the voluntary social companion defense. The justice replied:

Now I think that I have to give them that. There is sufficient evidence, not perhaps all that explicit, but sufficient evidence that would warrant them examining the evidence to see whether that reduction applies. Obviously they would have to find the defendant guilty of rape before they would question whether it was A or B.

Defense counsel then stated:

Your Honor, we're not asking for the lesser—the voluntary social companion, although I concede to the court that there is testimony here that, if believed—The problem I have with that is the problem that I've addressed in terms of the double charge, that it's yet another choice in which a jury, if they have problems with the evidence, might reach a compromise verdict. . . . I think in the minds of the layman they might hear the language and mistakenly believe it's [Class B rape is] a minor thing. We'll find him guilty

but we'll find she's a voluntary social companion; that somehow would be a compromise verdict.

That's what is troubling me and I request it not be given because it's a potential compromise. They would have then actually four possible verdicts; either Count I as it is or Count I reduced, or Count II as it is or Count II without the weapon, and that's four possible verdicts.

In declining to honor the defendant's request, the justice reasoned that he could not assume that the jury would do something wrong, such as to return an improperly compromised verdict. The judge subsequently instructed on the voluntary social companion defense and noted that the defense reduces the crime from a Class A to a Class B crime.

## Discussion

■ On appeal, the defendant argues that a defendant need not raise every defense available to him. The defendant equates the voluntary social companion defense to the defenses of entrapment and self-defense: by asserting these defenses, the defendant argues, a defendant necessarily admits participation in the alleged acts.[2] The defendant asserts, consequently, the "right" not to present such defenses. Because, he contends, the instruction was given and because the jury had "no way of knowing" that Class B rape may result in a ten-year sentence, the jury probably returned a compromise verdict of guilty of Class B rape. The defendant concludes that the refusal to honor his request to exclude the instruction concerning this defense was error.

In the jurisdictions that have a comparable defense to the crime of rape,[3] we find no case that specifically addresses this issue. The defendant's objections in *State v. Giglio,* 441 A.2d 303 (Me.1982), were, however, analogous. In *Giglio,* the defendant was convicted of, among other things, Class B rape. At trial, the defendant's strategy was to present the jury with only two choices: conviction of Class A rape or acquittal. The defendant, therefore, objected to the trial justice's instruction concerning the voluntary social companion defense on the ground that the evidence would not support conviction of the lesser crime of Class B rape. 441 A.2d at 307. The defendant's testimony had helped put the defense in issue. 441 A.2d at 306.

In the present case, the defendant does not argue that the evidence does not support giving the "voluntary social companion" defense instruction. Clearly, the defendant's testimony put the defense in issue. Rather, he argues that even though the defense is in evidence, the defendant has the right not to invoke the defense and thus the right not to have the instruction given. In essence, the defendant claims the right to pursue an "all-or-nothing" trial strategy,[4] regardless of the evidence adduced at trial.

The *Giglio* Court dismissed the defendant's objection to the justice's giving the "voluntary social companion" defense instruction. The Court stated:

Plainly, the "voluntary social companion" defense to the crimes of rape and gross sexual misconduct was put in issue by the evidence in this case; and it was *not only proper, but necessary,* for the trial justice to instruct the jury of its right to reduce

2. The very nature of a statutory defense involves an implicit admission of participation in the alleged crime. See e.g., § 253(3) and (4), Gross Sexual Misconduct (defenses of voluntary consumption or receipt of substance; husband and wife); § 361 Claim of Right (defense to theft); § 109 Consent (defense to crimes against person or property); § 37 Intoxication (raise doubt as to culpable state of mind); § 39 Insanity (defendant not criminally responsible); *State v. Farnsworth,* 447 A.2d 1216, 1218 (Me.

1982), Entrapment (defendant induced to commit crime and not predisposed); § 103–A Duress (defendant compelled to engage in conduct); § 108 Self-defense (defendant justified in using force).

3. Delaware, Hawaii, West Virginia.

4. The defendant was willing to take his chances with the jury on conviction of Class A rape or acquittal only.

the offense to a Class B rape or gross sexual misconduct.

441 A.2d at 311 (emphasis added).

■ The defendant's issue on appeal is governed by 17–A M.R.S.A. § 101(1) (1983). 441 A.2d at 311. That section reads:

The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion or authorization which is set out in the statute defining the crime by proof at trial, *unless the existence of the defense,* exception, exclusion or authorization *is in issue as a result of* evidence *admitted at the trial* which is sufficient to raise a reasonable doubt on the issue, *in which case the State must disprove its existence beyond a reasonable doubt.*

(Emphasis added.) Unlike an affirmative defense, which must be proved by the defendant by a preponderance of the evidence, § 101(2), any evidence admitted at trial concerning the defense, which is sufficient to raise a reasonable doubt that the defendant is guilty of the greater offense without the mitigating effect of the defense, requires the State to disprove the defense beyond a reasonable doubt. *State v. Lagasse,* 410 A.2d 537, 542 (Me.1980); *Tyre v. State,* 412 A.2d 326, 328 n. 1 (Del. 1980).

■ We have very recently noted, concerning the voluntary social companion defense, "[i]t is the indication of willingness to submit to, or the arousal of need for, sexual gratification by the conduct of the victim that is prescribed by the Legislature to be of sufficient mitigating significance to justify a jury's reduction of the seriousness of the offense." *State v. Reed,* 459 A.2d 178, 180 n. 1 (1983). From this, two principles emerge. First, the State is entitled to a conviction of an offense only when the State proves all the elements of the offense

and disproves the elements of any defense to that offense. The corollary of the first principle is that the defendant can be convicted of an offense only when the State has proved all the elements of, and has disproved defenses to, the offense. *See State v. Lunney,* 400 A.2d 759, 762–63 (Me. 1979); 17–A M.R.S.A. §§ 32 & 101(1).

Once these principles are considered, the defendant's argument cannot prevail. Although it is true that a defendant need not assert every possible defense available to him, the decision whether to raise a defense must be made prior to trial, not after the close of the evidence.[5] Once evidence sufficient to raise a reasonable doubt concerning the existence of the defense is admitted at trial, the nature of the criminal process requires that the evidence must be disproved or that the offense of which the defendant is convicted must be reduced.

■ As in *Giglio,* there was in this case sufficient evidence, offered by the defense, to put the voluntary social companion defense in issue. *Giglio,* 441 A.2d at 311. It was equally "proper and necessary" for the trial justice here to instruct the jury regarding this mitigating defense to conviction of Class A rape.

The entry is

Judgment affirmed.

All concurring.

---

5. Under the defendant's theory, the defense would be allowed to present evidence exculpatory to the defendant with no explanatory instruction. Even though convinced that the defendant compelled the victim to engage in sexual intercourse, it is possible that the jury might think it unfair to convict a defendant in light of evidence concerning a victim who was voluntarily with the defendant and who permitted sexual contact. The defendant apparently does not disfavor *all* compromise verdicts; he objects to those that result in conviction.