STATE of Maine

v.

Scott BERUBE.

Supreme Judicial Court of Maine.

Submitted on Briefs May 4, 1995.

Decided Dec. 28, 1995.

Michael P. Cantara, District Attorney, David Gregory, of counsel, Alfred, for the State.

Robert M. Napolitano, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

Scott Berube appeals from the judgment of conviction entered in the Superior Court (York County, *Delahanty, C.J.*) on a jury verdict finding him guilty of Class A manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp. 1994). Berube does not include among his claims of error any challenge to the trial court's instructions to the jury. We conclude, nevertheless, that the court's failure to instruct the jury on a partial defense generated by the evidence at trial constitutes obvious error requiring that the judgment be vacated.

On July 16, 1992, while riding his motorcycle, Berube struck and killed 85–year–old Florence Downs as she crossed Route 109 in Sanford. Berube was indicted and tried for manslaughter. The central issue at trial was whether the speed at which Berube was traveling at the time of the accident constituted reckless or criminally negligent conduct. The posted speed limit was 45 mph. The State's accident reconstructionist testified that Berube was traveling at a minimum speed of 78 mph. Berube's accident reconstructionist testified that his speed was in a range of 59 to 63 mph. Berube testified that he was going between 50 and 60 mph. Three eyewitnesses testified that he was traveling at 80 to 100 mph. The passenger in the car behind Berube testified that Berube was going 80 to 85 mph. The jury found Berube guilty of Class A manslaughter. The court entered a judgment on the verdict and sentenced Berube to 12 years confinement.

■ Notwithstanding Berube's failure to raise the issue at trial or on appeal, we review the court's failure to instruct the jury on a statutory defense "in order to maintain the basic integrity of judicial proceedings" and "to avoid depriving the defendant of his constitutional right to a fundamentally fair trial." *State v. Bahre*, 456 A.2d 860, 864 (Me.1983).[1]

■ The State charged Berube with manslaughter pursuant to 17–A M.R.S.A. § 203(1)(A) alleging that he recklessly, or with criminal negligence, caused the death of Downs. The statute provides a partial defense in cases of vehicular homicide:

> 3. Manslaughter is a Class A crime except that:
>
> A. It is a defense to a prosecution of a manslaughter based upon the reckless or criminally negligent operation of a motor vehicle, which reduces the crime to a Class B crime, that the death of the victim resulted from conduct that would otherwise be defined only as a civil violation or civil infraction.

17–A M.R.S.A. § 203(3) (Supp.1994). Speeding is a civil offense unless the vehicle exceeds the speed limit by 30 miles an hour or more. 29 M.R.S.A. § 1252(4) (1978) *replaced by* 29–A M.R.S.A. § 2074(3) (Pamph.1994) (effective Jan. 1, 1995). In this case the State conceded at trial that its theory of criminal liability rested solely on excessive speed and that if it were found that Berube's speed did not exceed the speed limit by 30 miles per hour then he could not be guilty of Class A manslaughter. As discussed above there was ample evidence in this case to generate the defense because two witnesses testified that Berube was traveling less than 30 mph over the speed limit. Nevertheless, neither did Berube request an instruction on

**1.** At the request of the Court, both parties submitted supplemental briefs addressing this issue.

this defense, nor did the court give one *sua sponte.*

Maine's criminal code requires the State to disprove beyond a reasonable doubt any statutory defense "in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue." 17–A M.R.S.A. § 101(1) (1983). "The State's obligation to disprove a defense generated by the evidence is the functional equivalent of the State's burden to prove all of the elements of the offense." *State v. Begin,* 652 A.2d 102, 106 (Me.1995). In *Begin,* we reiterated that "the nature of the criminal process requires that the State disprove the defense, even though the defendant made a tactical decision not to assert the defense." *Id.* (quoting *State v. Grover,* 460 A.2d 581, 584 (Me.1983)). Moreover, obvious error results when the court fails to instruct the jury on a statutory defense generated by the evidence. *Begin,* 652 A.2d at 106. We accordingly conclude that it was obvious error for the trial court in this case to fail to instruct the jury on the section 203(3)(A) defense.[2]

■ We find no merit in Berube's other claims of error. Contrary to his contention, the State did not commit a discovery violation when it failed to furnish him with a witness's oral statement made in the course of trial preparation. *State v. Whitten,* 499 A.2d 161, 162 (Me.1985). Furthermore, we discern no obvious error in the court's decision to permit Downs's daughter to testify and its failure to give *sua sponte* a curative instruction when she began to cry on the stand.

■ Finally, the court did not abuse its discretion when it permitted three eyewitnesses to give an opinion in miles per hour about the speed at which the motorcycle was traveling. All three viewed the motorcycle from stationary vantage points and in relation to a car that was following it. All had previously viewed motorcycles and other vehicles speeding down Route 109 on many occasions. Moreover, each had a substantial familiarity with motorcycles that would provide a basis for rationally considering the sound of the motorcycle as an indicator of speed. As a result, these particular witnesses had an opportunity to acquire an "intelligent thought" about the speed of Berube's motorcycle, and the court did not err by permitting them to so testify. *Cf. Wiles v. Connor Coal & Wood Co.,* 143 Me. 250, 261, 60 A.2d 786, 792 (1948) (view of vehicle split-second before impact with victim by victim's child companion while crossing street would not permit "intelligent thought" about vehicle's speed).

■ Finding no error besides the failure to instruct on the section 203(3)(A) defense, we conclude that Berube is not entitled to a new trial. Section 203(3)(A) acts as only a partial defense to Class A manslaughter and is considered by the factfinder only after the factfinder determines that the State has proved beyond a reasonable doubt that the defendant is guilty of manslaughter. A failure to instruct on the defense, therefore, does not effect the determination of guilt in the first instance. Even absent the instruction, Berube received a full and fair trial on whether he recklessly, or with criminal negligence, caused the death of Downs. The jury answered affirmatively, thus leaving unresolved only the issue of whether Downs's death resulted from conduct that would otherwise be defined only as a civil violation or civil infraction. Berube thus properly faced a situation in which the outcome most favorable to him was a conviction on Class B manslaughter.

Ordinarily we would vacate the judgment and remand for a new trial, thereby permitting the State another opportunity to obtain a conviction on Class A manslaughter. In this case, the State has offered to accept a judgment of conviction on Class B manslaughter in lieu of retrying the case. Be-

---

2. The State argues that this case is distinguishable from *Begin* because Berube "voluntarily, competently, intelligently, and knowingly waived" an instruction on that defense. Although the record indicates that Berube made no requests for special instructions or a special verdict form, the record before this Court does not contain a waiver of an instruction on the section 203(3)(A) defense. We do not infer a waiver from a defendant's strategy. See *State v. Begin,* 652 A.2d 102 (Me.1995) (where the defense of "it never happened" was arguably inconsistent with the defense of voluntary consumption of drugs).

cause this result does not unfairly prejudice Berube, we vacate the judgment and remand for an entry of judgment of Class B manslaughter.

The entry is:

Judgment vacated. Remanded with instructions to enter a judgment of conviction of Class B manslaughter and to resentence the defendant accordingly.

WATHEN, C.J., and ROBERTS, GLASSMAN, and RUDMAN, JJ., concurring.

LIPEZ, Justice, with whom CLIFFORD, Justice, joins, dissenting.

I respectfully dissent. Although the Court acknowledges that defendant never raised the section 203(3)(A) partial defense instruction at trial or on appeal, the Court says it must review the trial court's failure to instruct the jury on a statutory defense "in order to maintain the basic integrity of judicial proceedings" and "to avoid depriving the defendant of his constitutional right to a fundamentally fair trial." Those imperatives do not apply in this case because the defendant unmistakably waived any instruction on the section 203(3)(A) partial defense. *See State v. Boilard,* 488 A.2d 1380, 1391 (Me. 1985) (holding [1] that trial judge does not commit obvious error by not instructing on a defense that was deliberately waived by the defense).

An effective waiver requires sufficient evidence of a voluntary and intentional relinquishment or abandonment of a known right or privilege. *Green v. State,* 245 A.2d 147, 149 (Me.1968). Such evidence can include acts manifesting a waiver. *See State v. Kennedy,* 224 Neb. 164, 396 N.W.2d 722, 726 (1986) ("A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct."). *See also, Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ("The determination of whether there has been an intelligent waiver ... must depend in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.") In the present case the clear, unequivocal acts of the defendant and his counsel in the conduct of his defense demonstrate a waiver.

The omission of the section 203(3)(A) instruction from the court's charge was consistent with the defendant's theory of the case. In legal arguments to the judge at the close of the State's case and again after presentation of all of the evidence, the defendant argued that the State had not proven beyond a reasonable doubt that his speed was in excess of 30 miles over the speed limit and, therefore, that his culpability did not rise to the level of blameworthiness required to convict him of Class A manslaughter. The second motion for judgment of acquittal took place during a chambers conference called to discuss jury instructions.[2] After the court

---

1. While Justice Dufresne, sitting as an Active Retired Justice, wrote the opinion of the Court in *State v. Boilard,* 488 A.2d 1380 (Me.1985), his discussion of the adequacy of the trial court's jury instructions failed to garner the support of any of the other justices. Thus, while the remaining justices concurred with the first four parts of Justice Dufresne's opinion and with its judgment (which Justice Dufresne entered over his own dissent), they wrote separately and for the court to hold that the trial court's failure to instruct on a defense that the defendant had waived as part of his trial strategy was not obvious error.

2. In moving for acquittal at the close of the state's case, defense counsel argued that the evidence did not support a conviction of class A manslaughter because the state's evidence did not support a finding that defendant's speed had

exceeded the posted forty-five mile speed limit by thirty miles per hour. Defense counsel stated:
Make a motion for judgment of not guilty. Also would ask the court to consider the given testimony to date, that perhaps this is an issue I should have brought up before, the statute talks about a lesser offense, a Class B manslaughter based on a civil violation, and I would suggest to the court that the evidence is such at this point that there is not proof beyond a reasonable doubt. We have had basically speed estimates that have a range of eighty to a hundred miles-an-hour.... If [sic] that reason I would ask for a directed verdict or judgment of acquittal in the case, and further would point to the rule that reduces the charge to Class B in the event there's a civil violation, which is basically the ground, the foundation for the charge rather than a criminal violation, which is obviously anything over seventy-five would be criminal speeding.

denied the second motion, defense counsel did not request instruction on the section 203(3)(A) defense. Moreover, after consultation with his client, defense counsel withdrew his request for a special verdict form, stating that the use of the form would "confuse the jury about the issue of what is and isn't gross negligence." Although the record does not disclose the nature of the proposed verdict form, given the single charge of manslaughter against the defendant, a verdict form would only have been necessary in this case if the judge had to instruct the jury on the partial defense that would reduce Class A manslaughter to Class B.

Having twice moved for a judgment of acquittal on the Class A manslaughter charge and having been twice denied, the defendant deliberately adopted an all or nothing strategy. Defendant wanted the jury to consider only two possible verdicts: guilty of Class A manslaughter or not guilty. With the case postured in that way, defendant could use uncertainty over his speed on the motorcycle to argue that the State had not proven reckless or criminally negligent conduct beyond a reasonable doubt, and hence he should be acquitted.[3] If the Class B manslaughter instruction were before the jury, and the companion verdict form, uncertainty over the defendant's speed would only push the jury toward a sure compromise on Class B manslaughter. Thus, the defendant

made the tactical decision not to request an instruction on Class B manslaughter. Having been convicted of Class A manslaughter using this tactic, the defendant should not be permitted to now claim that the court erred by failing to give an instruction that the defendant clearly did not want.

Although footnote 2 of the court's opinion seems to acknowledge the possibility that the defendant could have explicitly waived instruction on the section 203(3)(A) partial defense, the court's requirement of an explicit waiver goes beyond what the Maine Criminal Code or our decisions require. Title 17–A M.R.S.A. § 101(1) (1983), cited by the Court, does not require that a trial court instruct the jury on all defenses generated by the evidence but waived tactically by the defendant as a ground of defense. *Cf.* 17–A M.R.S.A. 13–A (1983) (establishing rules governing when a trial court must instruct on lesser included offenses). Section 101(1) was derived from 17–A M.R.S.A. § 5(2) which was repealed by the legislature in 1981. *See* P.L.1981, ch. 324. Entitled "Pleading and Proof," former section 5 simply sought to codify fundamental rules concerning the prosecution of a criminal case.[4] The comment to 17–A M.R.S.A. § 5 confirms that this was section 5's limited objective. The comment provides in pertinent part:

> This section states several basic rules concerning the prosecution of criminal cases. . . .

---

3. The chambers conference began with defense counsel stating that the only special instruction he wanted was a causation instruction. Defense counsel stated:

> Based on—first of all I have no request for special instruction other than I think I requested a causation instruction.
>
> . . . Secondly, I would renew my motion for a verdict at least on the issue between class A and class B based on all the testimony that's in. . . . Based on . . . the state's best case scenario for their evidence from their reconstructionist it's 71.65 miles-an-hour, which is under criminal speed. I would suggest even in a light most favorable to the state there is reasonable doubt on the issue.

3. Both defense counsel's opening statement and closing argument resonate with this theme. For example, defense counsel ended his closing argument with the following remarks:

> The sole burden of proof again is on the state. They have to prove everything, and the defendant has to prove nothing. I would suggest

that given the evidence in this case there is a reasonable doubt as to the actual speed, and whether that was a gross deviation under all the circumstances, and number two, whether in fact the speed that's alleged in this case or the speed that is even determined by [the expert witness] was causal.

4. Former section 5(2)(B) provided:

> 2. The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion, or authorization which is set out in the statute defining the crime, either:
>
> B. By proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt.

17–A M.R.S.A. § 5 (1975) *repealed by* An Act to Reorganize Certain Chapters of the Maine Criminal Code, P.L.1981, ch. 324.

... If there is evidence of an exception ... subsection 2, paragraph B requires the State to disprove it, contrary to the rule in [*State v. Rowe*, 238 A.2d 217 (Me.1968)] that the defendant must sustain the burden that he comes within the exception. Subsection 2 also serves to place the burden on the State as to anything ... which the code designates as a "defense."

L.D. 314 § 5 comment (107th Legis.1975). In abrogating the then prevailing common law rule, section 5(2) shifted the burden of proof from the criminal defendant to the State. It did not preclude a defendant from waiving for tactical reasons an available defense generated by the evidence. Nor did the incorporation of section 5(2)'s mandate into section 101(1) alter the general practices of pleading and proof concerning defenses established by section 5(2). L.D. 811 (110th Legis.1981) (stating that the amended section 101 "sets forth general guidelines for defenses and justifications for criminal conduct" and is "derived from current Title 17–A, section 5"). Therefore, neither section 5(2) nor its statutory successor, section 101(1), embodies a rule requiring the court to instruct on defenses waived by the tactical decisions of the defendant.

Our prior cases also do not support such a rule. In *State v. Grover*, 460 A.2d 581 (Me. 1983), and *State v. Giglio*, 441 A.2d 303 (Me. 1982), the defendants appealed from judgments of conviction, claiming that the trial courts had erred by instructing the juries over the defendants' objections on a defense raised by the evidence. In holding that it was within the trial court's discretion to give an unrequested instruction on a factually available defense, we stated that the contested instruction was "not only proper, but necessary." *Giglio*, 441 A.2d at 311. *See also Grover*, 460 A.2d at 584. In those cases,

however, we only decided whether the trial court had erred in *giving* an unrequested instruction to the jury. Thus, at most, *Grover* and *Giglio* stand for the proposition that it would not have been error for the trial judge in this case to have instructed the jury on the section 203(3)(A) defense even in the face of the defendant's tactical decision not to seek such an instruction. If, however, the court reads *Grover, Giglio,* and section 101(1) to *require* the trial court to instruct the jury on an available defense despite a waiver of that defense by the defendant's tactical decisions, the court has substantially altered the obvious error standard in criminal cases.

Obvious errors are "errors or defects affecting substantial rights" that, because of their severity and potential damage to an accused's ability to receive a fair trial, may be noticed by us absent an objection. M.R.Crim.P. 52(b). Under a proper obvious error analysis, the defendant should not be entitled to relief by reason of his deliberate defensive strategy of withholding a partial defense from the jury's consideration. There is no manifest injustice when a defendant's chosen trial strategy fails him. A trial court's failure to instruct *sua sponte* on an applicable defense waived by the defendant rises to the level of obvious error only in those limited cases when, on the face of the record, defense counsel's tactical decision not to raise the defense was so "obviously wrong" and manifestly unreasonable that the trial judge's accedence to the defendant's wishes resulted in substantial injustice to the defendant.[5] *See Boilard*, 488 A.2d 1380, 1391 (Me.1985). *Cf. State v. Sprague*, 617 A.2d 564, 565 (Me.1992) (obvious error to omit instruction on defense that was central to defense case); *State v. Davis*, 528 A.2d 1267, 1270 (Me.1987) (obvious error to omit instruction where defense was essential to de-

---

**5.** *State v. Begin*, 652 A.2d 102 (Me.1995), may have been such a case. The young victims in that case acknowledged the voluntary consumption of marijuana, furnished by defendants Begin and LaMarche, prior to the alleged sexual acts by Begin. Although Begin denied furnishing marijuana to the boys or engaging in sexual acts with them, he could have asked for a voluntary consumption of drugs instruction, thereby invoking a complete defense to the class B gross sexual assault charges, without abandoning his denial

defense to the class C charges of aggravated furnishing of drugs. Indeed, Begin might have been entitled to a judgment of acquittal on the gross sexual assault charges at the completion of the state's case if he had asked for one on the basis of the voluntary consumption defense. The boys testified to the voluntary consumption of drugs as part of the state's case. There was no contrary evidence until Begin and LaMarche testified in their own defense.

fendant's case); *State v. Daley,* 440 A.2d 1053, 1055 (Me.1982) (obvious error to omit an instruction on defense where instruction was crucial to defendant's receiving a fair trial).

Based on the advice of counsel, defendant chose not to have the jury instructed on the section 203(3)(A) defense. This knowing choice constituted a waiver of the defense. The defendant's waiver was not so obviously wrong or unreasonable that it required the trial justice to intervene and instruct the jury on the waived defense to preserve the defendant's right to a fair trial. *Id.*

I would affirm the judgment.

ROBERTS, Justice, concurring.

I join in the opinion of the Court. I write separately, however, to state my view of a well written dissent. I agree fully with the legal principles on which the dissent is based, but I do not agree that the record in this case supports the dissenters' conclusion that Berube "unmistakably waived" a jury instruction on the section 203(3)(A) defense.