2005 ME 67

**STATE of Maine**

v.

**William R. CLEAVES Jr.**

Supreme Judicial Court of Maine.

Submitted On Briefs: May 17, 2005.

Decided: June 10, 2005.

Michael E. Povich, District Attorney, Paul F. Cavanaugh, 1st Asst. Dist. Atty., Calais, for State.

Christopher James Whalley, Esq., Ellsworth, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] William R. Cleaves Jr. appeals from a judgment of the Superior Court (Washington County, *Gorman J.*) finding him guilty, after a jury trial, of reckless conduct with a firearm (Class C), 17–A M.R.S.A. §§ 211(1), 1252(4), (5) (1983 & Supp.2004). Cleaves asserts that the court committed obvious error in failing to instruct the jury on the justifications of competing harms, 17–A M.R.S.A. § 103 (1983), and self-defense, 17–A M.R.S.A. § 108(1) (1983). Because trial counsel did not request the instructions at issue and no obvious error is demonstrated in the court not giving the instructions *sua sponte*, we affirm the conviction.

I.  CASE HISTORY

[¶ 2] William R. Cleaves Jr. and his fiancée, now his wife, were living with her two

children in Columbia Falls. On the evening of April 11, 2003, Cleaves was at home with his fiancée's son after electing not to go on a planned trip.

[¶ 3] At some point in the evening, after consuming a six-pack of beer, Cleaves fell asleep while watching television. His fiancée and her daughter then came home. The children went upstairs to their bedrooms. Thereafter, Cleaves's fiancée attempted to wake him, leading to a fight between Cleaves and his fiancée. According to the son's testimony, during the course of the fight, Cleaves and his fiancée were holding each other by the throat. The fiancée's daughter went to a neighbor's house and called the police.

[¶ 4] As Cleaves and his fiancée continued to struggle, Cleaves picked up a loaded revolver that was in a holster on the nightstand by the bed. The parties then wrestled for control of the gun. Cleaves testified that he was attempting to unload the gun. The struggle continued until a State Police officer arrived. When the officer arrived, Cleaves and his fiancée were still struggling for control of the gun, with the gun pointed away from them and towards a wall. The officer ordered Cleaves to drop the gun. When Cleaves did not do so, the officer hit Cleaves with a flashlight, and Cleaves then dropped the gun.

[¶ 5] The officer testified that, upon examining the gun, he found one live shell in the cylinder. He did not discover any loose shells in the bedroom or on Cleaves's person. Cleaves testified that there were six shells in the gun before he initially picked it up to begin unloading it.

[¶ 6] As a result of this incident, Cleaves was indicted and charged with three counts of criminal threatening (Class C), 17–A M.R.S.A. §§ 209, 1252(4), (1983 & Supp.2004), one count of assault upon his fiancée (Class D), 17–A M.R.S.A.

§ 207(1)(A) (Supp.2004), and one count of reckless conduct with the use of a firearm (Class C), 17–A M.R.S.A. §§ 211, 1252(4), (5). The matter proceeded to a jury trial. At the close of the State's case, the court dismissed the two criminal threatening counts involving the children.

[¶ 7] At the close of all of the evidence, before a lunch break, the court met with counsel to discuss jury instructions. The court indicated that, after the discussion, the court would prepare jury instructions in writing and make them available to counsel prior to closing arguments. In the discussion of jury instructions, Cleaves requested a self-defense instruction, 17–A M.R.S.A. § 108, specifically and only with respect to the assault charge. He did not request any other justification instructions.

[¶ 8] After the lunch break, the court allowed the parties to review its written instructions. After that review, the parties indicated that the instructions were satisfactory. The case then proceeded to closing arguments and jury instructions. In closing argument, Cleaves's counsel emphasized his view that there had been no reckless conduct towards Cleaves's fiancée because, at all times, the gun was pointed away and Cleaves was attempting to unload it, so that his fiancée was never threatened with the firearm.

[¶ 9] The jury acquitted Cleaves of the assault charge and the remaining charge of criminal threatening towards his fiancée. He was convicted of reckless conduct with the use of a firearm. He was sentenced to one year at the Department of Corrections, the mandatory minimum sentence upon conviction of reckless conduct with the use of a firearm. 17–A M.R.S.A. §§ 211, 1252(4), (5). With new counsel, Cleaves then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 10] Cleaves asserts that the court should have instructed the jury, with

respect to the reckless conduct charge, on the justifications of competing harms and self-defense. Because those instructions were not requested at trial, Cleaves also asserts that it was obvious error for the court not to instruct on those points. To demonstrate obvious error, Cleaves must convince us that the error in not instructing on competing harms and self-defense was sufficient to deprive Cleaves of a fair trial or resulted in such a serious injustice that we cannot, in good conscience, let the conviction stand. *State v. White*, 2002 ME 122, ¶ 8, 804 A.2d 1146, 1149.

[¶ 11] Here, the trial court engaged in an instruction preparation practice that was very well tailored to providing the parties with accurate and thorough instructions. First, the trial court met with counsel. Instructions were discussed. Counsel for the defense requested and received an instruction on self-defense regarding the assault charge. Counsel for the defense expressly waived the self-defense instruction with regard to the reckless conduct charge and did not request any other justification instructions. That waiver appears consistent with Cleaves's trial strategy, which was to assert that no offense was committed because no reckless conduct towards his fiancée occurred.

[¶ 12] After the discussion with counsel, the court, during the lunch break, took the time to prepare a complete set of written instructions. After the lunch break, counsel were given an opportunity to review and carefully consider the court's written instructions that it planned to give to the jury. With that consideration, counsel for both the State and the defense, expressed satisfaction with the instructions, and the jury was instructed accordingly.

[¶ 13] In this circumstance, there was no error, let alone obvious error, in the court's instructions. The defense, as a matter of trial strategy, made a choice to waive justification instructions with regard to the reckless conduct charge. Such a waiver is fully appropriate and authorized by 17–A M.R.S.A. § 101(1) (Supp.2004). Presenting a justification issue to the jury could have suggested an inference that the defense was conceding that the crime may have been committed but may have had a justification. That inference would have been inconsistent with the defense trial strategy. Obvious error review provides no invitation to change trial and instruction request strategy when the results of the original strategy turn out less favorably than hoped for.

[¶ 14] Beyond the express waiver, it is difficult to conceive how, in the circumstances of this case, it should have been "obvious" to the trial court that a competing harms issue was generated. Cleaves's position at trial was that he was trying to unload the firearm to prevent any risk of injury to himself or his fiancée. At no time did Cleaves suggest that he was in any way committing the crime of reckless conduct with a firearm in order to avoid injury to himself or his fiancée. This is unlike most competing harms cases where a defendant asserts that he or she committed a crime in order to avoid a greater harm, such as injury from assault, if the defendant had not taken protective action that included committing a crime. *See State v. Caswell*, 2001 ME 23, 771 A.2d 375.

[¶ 15] Accordingly, we conclude that the trial court's preparation for jury instructions in this case was exemplary. Counsel received the instructions they requested, any other instructions were expressly waived, and there was no error, let alone obvious error, in the court not, *sua sponte*, instructing the jury on issues that may have been inconsistent with Cleaves's trial strategy.

[¶ 16] We also conclude that the evidence is sufficient to support the conviction. Grabbing a loaded firearm, introducing it into an altercation, and then waving it around for up to twenty minutes of struggling is sufficient evidence to support a conviction on the reckless conduct charge. Because no loose shells were found on Cleaves's person or in the vicinity of the struggle, the jury could have reasonably disbelieved Cleaves's testimony that he was unloading the revolver during the struggle.

The entry is:

Judgment affirmed.