MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 96
Docket:       And-13-45
Argued        September 10, 2013
Decided:      November 7, 2013

Panel:        SAUFLEY, C.J., and LEVY, ALEXANDER, SILVER, MEAD, GORMAN, and
              JABAR, JJ.

## STATE OF MAINE

v.

## BARTOLO P. FORD

MEAD, J.

[¶1] Bartolo P. Ford appeals from a judgment of the trial court (*Marden, J.*) on a jury verdict convicting him of one count of aggravated attempted murder (Class A), 17-A M.R.S. § 152-A(1)(F) (2012), two counts of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(C) (2012), two counts of reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1252(4) (2012), one count of eluding an officer (Class C), 29-A M.R.S. § 2414(3) (2012), and one count of theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A) (2012). On appeal, Ford argues that the trial court erred when it failed, *sua sponte*, to instruct the jury on self-defense and voluntary intoxication, and when it did not conduct a colloquy directly with him to confirm that he knowingly and voluntarily chose not to testify. Because we conclude that Ford

2

waived jury instructions on self-defense and intoxication, and waived his right to testify through counsel, we affirm.

## I.  BACKGROUND

[¶2]  On the evening of September 15, 2008, Ford led the Auburn police department on a high-speed chase.  The chase began when Ford sped off after a police officer, suspecting that the concrete well tiles in the bed of Ford's truck had been stolen, approached the vehicle and questioned him.  It ended when Ford crashed his F-550 dump truck into a stream.

[¶3]  During the chase, Ford repeatedly used his truck to ram the pursuing police cruisers.  Two cruisers sustained serious damage, and one officer narrowly escaped being struck by Ford's dump truck by scrambling up an embankment moments before Ford drove his truck into the officer's cruiser.  When he refused to stop, Ford was fired upon by an Auburn police officer; the bullet hit and shattered Ford's hip.  Ford ultimately surrendered to a Maine State Police trooper after crashing his dump truck into a small stream.  He was wet, disheveled, and had blood running down his leg.

[¶4]  At trial, Ford argued that he suffered from a mental abnormality as defined by 17-A M.R.S. § 38 (2012).  As evidence of his condition, he points to post-traumatic stress disorder, which he attributes to trauma suffered in the military during Operation Desert Storm, and injuries sustained in a car accident.  Ford also

argued that the prescription medications he consumes to treat his PTSD contributed to his mental abnormality. Much of this evidence was presented through expert testimony. Dr. John Dorn, a psychiatrist, concluded that Ford was "attacking the enemy as he saw it" because his PTSD caused him to react to the stimuli of flashing lights and sirens. Dr. Dorn determined that the combination of the drugs Ford took that day, his concussion from the car accident, and his PTSD triggered a flashback state that could have lasted for several hours.

[¶5] Dr. Carlyle Voss, also a psychiatrist, testified for the State that some of Ford's reports made his defense of abnormal condition of the mind plausible, but that he also believed Ford was exaggerating. Ultimately, Dr. Voss concluded that Ford was not out of touch with reality that night. Ford did not testify.

[¶6] After the close of evidence, the court held an in-chambers conference with the prosecutor and one of Ford's defense attorneys to discuss and review jury instructions.[1] During the conference, the court asked whether defense counsel intended to request a self-defense instruction, suggesting that such an instruction might be warranted. The court advised counsel, "While you're looking at things, take a look at self-defense. I'm surprised it wasn't raised." The court further explained that the evidence may have generated the instruction noting, "Well, he's

---

[1] We have called this method of reviewing jury instructions exemplary. *See State v. Cleaves*, 2005 ME 67, ¶¶ 11-12, 15, 874 A.2d 872.

4

been shot . . . [a]nd they're still chasing him.  He thinks they're trying to chase him to kill him."

[¶7]  Ford's defense counsel, however, made it abundantly clear that their trial strategy did not include the theory of self-defense.  The attorney who participated in the charging conference stated that they were not raising the defense, did not want it raised, and questioned whether it had been generated by the evidence.

[¶8]  An instruction on the defense of voluntary intoxication was also discussed.  Again, defense counsel argued that they were "not putting on an intoxication defense," and explained that the introduction of such an instruction would "get real confusing . . . [b]ecause voluntary intoxication means that it's no defense to reckless conduct."  The attorney stated, "Just for the record, I am not asking for it and the defense is objecting."  The court did not instruct the jury on self-defense or voluntary intoxication.

[¶9]  During the same in-chambers conference, the court asked defense counsel whether Ford intended to take the stand.  The court stated, "[I am] assuming based on what [the defense attorney is] telling [the court] that you do not . . . intend to have the defendant testify?"  The attorney replied affirmatively, confirming that Ford would not testify.  Ford himself did not indicate at any point that he wanted to testify, or otherwise be heard.

[¶10]   The jury found Ford guilty on all counts.  The court imposed a sentence of twenty years, with all but nine years suspended and six years probation for the aggravated attempted murder conviction.  Concurrent sentences were imposed on the remaining counts.  Ford did not timely appeal from the conviction. He later filed a petition for post-conviction review, claiming that his attorney was ineffective for failing to timely appeal.  The Superior Court granted his post-conviction review petition and granted him the right to appeal from the judgment of conviction.  This appeal followed.

## II.  DISCUSSION

A.    Instructions on Self-Defense and Voluntary Intoxication

[¶11]   Ford argues that regardless of whether he explicitly waived instructions on self-defense and voluntary intoxication during his trial, we must find that the court committed obvious error by not instructing on those defenses. We disagree.

[¶12]   Obvious error review focuses our attention on those errors so "seriously prejudicial" that they tend to produce manifest injustice.  *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147.  In the past, we have held that a trial court's failure to instruct the jury on a defense that has been generated by the evidence rises to this high standard.  *See, e.g., State v. Berube*, 669 A.2d 170, 172 (Me. 1995) ("[O]bvious error results when the court fails to instruct the jury on a

statutory defense generated by the evidence."); *State v. Davis*, 528 A.2d 1267, 1270 (Me. 1987) ("[O]nce the issue is generated in the record, an instruction [on the defense] must be given, and, where [the defense] is an issue essential to the defendant's case, a failure to so instruct amounts to obvious error . . . ."); *State v. Begin*, 652 A.2d 102, 106 (Me. 1995) ("[I]t is . . . obvious error to fail to instruct the jury on . . . a statutory defense generated by the evidence.").

[¶13]  Ford argues that this line of cases, along with our decision in *State v. Grover*, 460 A.2d 581 (Me. 1983), requires us to conclude that the trial court committed obvious error when it failed to instruct on self-defense and voluntary intoxication.  None of these cases, however, help Ford overcome or otherwise avoid the consequences of his explicit waiver of the instructions that he now argues the trial court should have given.

[¶14]  His reliance on *Grover* and its predecessor, *State v. Giglio*, 441 A.2d 303 (1982), is misplaced; those cases stand only for the proposition that the trial court does not err when it gives an unrequested instruction to the jury.  In *Giglio*, we held that it was not error for the trial court to give an unrequested instruction even though it conflicted with the defendant's trial strategy.  *Id.* at 311. And in *Grover*, we rejected the defendant's assertion of a "right to pursue an 'all-or-nothing' trial strategy," stating that the defendant should not be allowed to "present evidence exculpatory to the defendant with no explanatory instruction."

460 A.2d at 584 n.5. These cases do not, as Ford argues, require a trial court to instruct the jury on an available defense in the face of a defendant's unequivocal explicit waiver of that defense.

[¶15] More importantly, Ford's reliance on the *Berube* line of cases overlooks the explicit language of 17-A M.R.S. § 101(1) (2012), and the well-established rule that obvious error review is precluded when a defendant "expressly waives" a jury instruction. *State v. Cleaves*, 2005 ME 67, ¶ 15, 874 A.2d 872.

[¶16] Shortly after our decision in *Berube*, the Legislature amended 17-A M.R.S. 101(1) to specify that a trial court is not required to instruct on an affirmative defense that has been waived by the defendant.[2] In *Cleaves*, we recognized the Legislature's departure from *Berube*, and found that a defendant's waiver of a defense instruction is "fully appropriate and authorized by [Section 101(1)]." 2005 ME 67, ¶ 13, 874 A.2d 872. We also rejected the argument that obvious error review provides an "invitation to change trial and instruction request strategy when the results of the original strategy turn out less favorably than hoped for." *Id.* ¶ 13. Our later decisions confirm this principle. *See, e.g., State v. Allen*, 2006 ME 21, ¶ 9 n.3, 892 A.2d 456.

---

[2] Title 17-A M.R.S. § 101(1), repealed and replaced by P.L. 1981, c. 324, § 24, was amended by P.L. 1997, c. 185, § 1 (effective June 26, 1997).

8

[¶17]   In this case, Ford was represented by experienced defense counsel who pursued an abnormal state of mind defense, a completely appropriate tactic under the circumstances, and made strategic decisions not to pursue self-defense or voluntary intoxication defenses.[3]   The record clearly shows that Ford not only failed to request or argue for self-defense and voluntary intoxication instructions, but that he explicitly objected to their introduction after the trial court suggested that they might be relevant.[4]   He cannot now, after his first strategy failed, take the opposite position on appeal.[5]

B.     Ford's Right to Testify

[¶18]   Ford argues that, in the absence of record evidence demonstrating that he was made aware of his right to testify, we must presume that he did not voluntarily or intentionally waive that right.   He contends that evidence showing that defense counsel discussed his intention not to testify with the trial court does not suffice.

---

[3]   Although the attorneys' specific reasoning is not part of the record, it is reasonable to assume that they may have eschewed defense theories that might strain credibility or otherwise conflict with defenses they deemed more likely to succeed.

[4]   We note that it is entirely appropriate for judges to raise issues regarding potential areas for jury instruction even when not raised by the parties if the evidence raises such issues.  *See Grover*, 460 A.2d at 581.

[5]   Because we find that Ford waived instructions on self-defense and voluntary intoxication, it is unnecessary for us to determine whether those defenses were generated by the evidence.

[¶19]  In *State v. Tuplin*, we declined to require the formulaic procedural safeguard that Ford urges us to adopt.  2006 ME 83, ¶ 21, 901 A.2d 792.  There, we recognized that waiver of the right to testify is a flexible concept that may be determined from the totality of all the circumstances, but that must also be balanced with the privilege against self-incrimination because the waiver of one is "essentially an election of the other."  *Id.* ¶ 16.

[¶20]  Observing the "delicate balance" between these two fundamental rights, we choose to require only that the record demonstrate that *unrepresented* defendants are "aware of and understood [their] right to testify as well as [their] correlative right not to testify."  *Id.*  We did not, however, require that trial courts afford the same protection to represented defendants.

[¶21]  It is a lawyer's duty to advise his or her client of all rights, including the right to testify.  *See Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007).  In the absence of evidence to the contrary, we must assume that Ford was properly advised by his attorneys.[6]

[¶22]  We note, however, that the best practice is for the trial court to conduct a colloquy with the defendant individually on the record to confirm that (1) he is aware of his absolute right to testify and his right to remain silent, and that

---

[6]  If Ford's attorney failed to counsel him on his right to testify, his remedy is through post-conviction review.  *See State v. Trott*, 2004 ME 15, ¶¶ 5, 13, 841 A.2d 789 (concluding that post-conviction review is the exclusive remedy for ineffective assistance of counsel).

no person may deprive him of these rights or make the decision for him to forgo one and elect the other; and (2) that his decision is knowing and voluntary. Such an inquiry of represented defendants would add a second layer of assurance that elections not to testify, or to remain silent, are knowingly undertaken.

[¶23] The record nonetheless demonstrates that Ford waived his right to testify. Accordingly, the trial court committed no error in the circumstances of this case by confirming the election not to testify through counsel.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Justin W. Andrus, Esq., Shankman & Associates, Topsham, for appellant Bartolo P. Ford

Norman R. Croteau, District Attorney, and Andrew S. Robinson, Asst. Dist. Atty., Androscoggin County District Attorney's Office, Auburn, for appellee State of Maine

**At oral argument:**

Justin W. Andrus, Esq., for appellant Bartolo P. Ford

Andrew S. Robinson, Asst. Dist. Atty., for appellee State of Maine

Androscoggin County Superior Court docket number CR-2008-973